No. 55,082

In The Matter of the Trust Estate of Richard Joseph Rivas, Deceased. Trustee, Johnson County National Bank and Trust Company.

(666 P.2d 691)

Opinion filed July 15, 1983.

*Murray E. Anderson*, of Wolf, Longan & Anderson, of Stanley, argued the cause and *S. W. Longan, III*, of the same firm, was on the brief for the appellants, Carol and Staci Rivas.

*Dale K. Irwin*, of Wells, Slough, Connealy & Irwin, of Kansas City, Missouri, argued the cause and *Cathleen Connealy*, of the same firm, and *Ernest L. Johnson* of Kansas City, Kansas, were with him on the brief for the appellee Joan Rivas.

The opinion of the court was delivered by

Herd, J.: This is an appeal from the trial court's order terminating a trust and ordering distribution of the trust property.

Richard Joseph Rivas (Richard) was originally married to Joan Rivas. Joan had a daughter, Sandra Hill, by a previous marriage. During their marriage Richard and Joan had a son, Richard Michael Rivas (Michael). Richard and Joan were subsequently divorced and a property settlement agreement was entered into on July 14, 1964. In paragraph 4 of the agreement Richard agreed to provide seven years of post-secondary education for Michael. This obligation, however, was not to extend past August 31, 1986. Paragraph 5 established an "Insurance Trust" for the benefit of Michael. The trust property consisted of two life insurance policies. The primary beneficiary of the policies was the Johnson County National Bank & Trust Company of Prairie

Village, as trustee for the "care, support, maintenance and education" of Michael. Operation of the trust was contingent upon the death of Richard prior to the termination of the obligation set out in paragraph 4. The terms of the trust were fairly standard, calling for liberal exercise of the power of invasion where necessary and stating the trustee's word would be final and binding on Michael.

Paragraph 5(e) of the agreement provided that upon the termination of the obligation undertaken by Richard "the trustee shall reassign title ownership to the aforesaid insurance policies to the husband (Richard) if he is then living." In case Richard died prior to the time for reassignment, paragraph 5(f) stated:

"[T]he balance of any proceeds and investments, income and principal, remaining after the termination of the obligation, as created in this paragraph entitled '5. Insurance Trust', shall be disposed of in accordance with said husband's directions or the directions of such other person to whom the husband may have granted a power of appointment with regard to such proceeds and investments."

In February of 1965 the property settlement agreement between Richard and Joan was amended. All the amendments concerned the insurance trust and, according to the document, were "of a technical nature." Indeed, a quick perusal of the amended agreement reveals no substantive changes. Again, the purpose of the trust was to insure that the obligation of Richard to provide for Michael's education was fulfilled. Paragraph 5(g) of the amended agreement dealt with reassignment of the trust property to Richard. It stated:

"Upon the termination of the obligation to Richard Michael Rivas created under paragraph 4 hereof, for which the husband shall furnish satisfactory proof to the trustee, but in no event later than August 31, 1986, the trustee shall reassign title ownership to the aforesaid insurance policy to the husband if he is then living."

Paragraph 5(h), in turn, provided:

"If the husband dies prior to the time for reassignment stated in subparagraph (g) hereof, the balance of any proceeds and the investments, income and principal remaining after the termination of the obligation, as created in this paragraph entitled '5. Insurance Trust:', shall be paid and distributed to those persons to whom the husband has appointed to receive said proceeds by lifetime conveyance or by Will, but if the trustee has no actual knowledge of the execution of such lifetime conveyance or the existence of such appointment by terms of the insured's Will, or if the insured omits to exercise such appointment, either by lifetime conveyance or by the terms of his Will, the trustee shall distribute said

proceeds to the heirs at law of the husband as they then exist and as if the husband had died intestate at that time, a resident of the State of Kansas."

Finally, paragraph 5(i) stated the provisions of the trust were to be construed and administered in accordance with the laws of the State of Kansas.

In March of 1965 Richard executed his will. Article II of that document stated:

"I hereby exercise the power of appointment given to me by the provisions of Paragraph 5 of the Property Settlement Agreement dated July 14, 1964, between myself and Joan Louise Rivas, as amended on February 15, 1965, so as to appoint free of trust all my interest in the property subject to such power to my son, RICHARD MICHAEL RIVAS, if he survives me, but if he does not survive me, then it is my intention not to exercise said power, and in such event nothing herein contained shall constitute an exercise thereof in whole or in part."

In August of 1968, Richard Rivas remarried. He and his second wife, Carol, had a daughter, Staci Marie. Approximately one year later, on September 16, 1969, Richard Rivas died, a resident of Missouri. On January 5, 1970, the "Notice of Appointment of Trustee" was filed, along with an inventory affidavit and trustee's bond. Over the next twelve years the Johnson County National Bank administered the trust, making periodic payments to Michael Rivas. However, since Michael never made a serious attempt to further his education, no large disbursements were made and the trust property grew from the initial $35,000 from Richard's life insurance policy to $48,143.07 on final accounting.

On February 26, 1982, Michael Rivas died intestate, a resident of Missouri. On July 14, 1982, the trustee filed a "Petition for Determination of Distribution and Termination" in Johnson County District Court asking the court to terminate the trust and distribute its assets. The administrator of Michael's estate, Joan Rivas, claimed the trust property, as did Richard's widow, Carol Rivas, and his daughter Staci.

After a hearing and consideration of trial briefs, the trial court ruled in favor of Michael's estate, holding:

"Termination of the trust is mandated by the death of Richard Michael Rivas. The remaining corpus passes by the power of appointment exercised by the grantor in his Last Will and Testament. Said remaining corpus shall be paid and set over to the personal representative of Richard Michael's estate."

Carol Rivas and her daughter Staci have appealed.

The sole issue is whether the trial court erred in terminating

the trust and ordering the trust property to be distributed to the administrator of Michael Rivas' estate.

Richard Rivas owned the property. As owner he created the trust for the use and benefit of his son, Michael Rivas. In the trust instrument Richard retained the power through a "lifetime conveyance or by will" to designate the persons to receive the balance of proceeds remaining in the trust after the termination of the trust obligation. Richard Rivas chose to execute a will in 1965 wherein he appointed his son, Richard Michael Rivas, to receive the trust property, if Michael survived Richard. Richard died in 1969 with Michael surviving him. If Richard Rivas' will is valid the trust property passed by will to Michael Rivas. The trial court so held.

Appellants offer two arguments in favor of reversing the trial court's order. First, they claim Richard Rivas' will was revoked by his subsequent remarriage and birth of a child. They reason if there was no will Richard did not exercise the power he reserved in paragraph 5(h) of the trust instrument thus leaving the trust property to be distributed to Richard's heirs at law "as they then exist and as if the husband had died intestate at that time, a resident of the State of Kansas." This might be a good argument if the laws of Kansas applied in determining the validity of the will. See, e.g., K.S.A. 59-610. Absent a statute to the contrary, however, the validity of a will of personal property depends on the law of the testator's domicile at the time of his or her death. 16 Am. Jur. 2d, Conflict of Laws § 55, p. 93; 6 Page on Wills § 60.7, 60.16, pp. 458, 474 (rev. ed. 1962). In this case that state is Missouri.

Mo. Rev. Stat. § 474.400 (1978) provides:

"No will in writing, except in the cases herein mentioned, nor any part thereof, shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction."

Richard Rivas' will was not revoked pursuant to this statute. Mo. Rev. Stat. § 474.420 (1978) states:

"If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked but the effect of the revocation shall be the same as if the divorced spouse had died at the time of the divorce. With this exception, no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator."

Since Richard's will was made after his divorce from Joan, this section is inapplicable.

Appellants rely mainly on Mo. Rev. Stat. § 474.240 (1982 Supp.) which states:

"1. If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate, unless:

"(1) It appears from the will that the omission was intentional;

"(2) When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child; or

"(3) The testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator, the amount of the transfer or other evidence;

"2. If at the time of execution of the will the testator fails to provide in his will for a living child solely because he believes the child to be dead, the child receives a share in the estate equal in value to that which he would have received if the testator had died intestate.

"3. An illegitimate child is not a child of a male testator, for the purposes of this section, unless the testator, during his lifetime or in the will, recognized the child was his.

"4. In satisfying a share provided in this section, the devises made by the will abate as provided in section 473.620, R.S. Mo."

It appears this statute may apply. Staci Marie Rivas was indeed born after the execution of Richard's will, which made no provision for her. Even if it is applicable, however, it does not act to revoke the will. The Missouri Supreme Court has held that, pursuant to such a statute, the testator is deemed to have died intestate with regard only to the "pretermitted heir." The will itself is otherwise valid. See *Gibson v. Johnson*, 331 Mo. 1198, 1204, 56 S.W.2d 783 (1932). Accordingly, appellants' argument should have been made at the time Richard Rivas' will was probated. The only question here is the validity of Article II of the will, which merely exercises the power of appointment reserved to Richard under the trust. Pursuant to Missouri law, the will was not revoked and Article II is effective.

Appellants also argue the trial court was in error because the power of appointment in Richard's will was not effective unless Michael survived Richard's reversionary interest in the trust. They claim Richard's interest in the trust did not end until the termination of the trust obligation, which would occur when Michael had received seven years of post-secondary education or August 31, 1986, whichever came first. Since Michael did not

survive either of these occurrences, they argue, he did not survive Richard's reversionary interest in the trust and the appointment of Michael to receive the trust property was ineffective. We reject this rationale.

The primary consideration in construing a will is, of course, to determine the intent of the testator. Where that intent is clearly expressed in the will, the court need go no further in making the determination. *McClary v. Harbaugh,* 231 Kan. 564, 567, 646 P.2d 498 (1982). Here the plain and unambiguous language of Richard's will stated his intention to appoint Michael to receive the trust property subject only to the condition that Michael survive him. This condition was obviously met. Michael Rivas was then entitled to have the trust property assigned to him upon the termination of the obligation undertaken in the trust. Although neither of the two methods of termination envisioned by Richard occurred, the trust obligation terminated with the death of Michael. The trust property was properly awarded to his estate.

The judgment is affirmed.