No. 63,776 ■

### IN THE MATTER OF THE TRUSTEESHIP OF THE WILL OF VERNON E. DANIELS, DECEASED.

(799 P.2d 479)

Opinion filed October 26, 1990.

*Ron Svaty*, of Svaty, Sherman and Hoffman, of Ellsworth, argued the cause and was on the briefs for appellant Dee Ann Roshong.

*Rod Ludwig*, of Miller & Ludwig, of Beloit, argued the cause and was on the briefs for appellees remaindermen.

*Don W. Noah*, of Noah and Harrison, of Beloit, argued the cause and was on the brief for appellee Guaranty State Bank and Trust Company.

The opinion of the court was delivered by

HERD, J.: This case originated as a probate case requiring the construction of two testamentary trusts. Guaranty State Bank & Trust Company (Guaranty), trustee of testamentary trusts established by Vernon E. Daniels, brought this action requesting an interpretation of the wills of Vernon Daniels and Dora Dell Daniels. The district court ruled in favor of the named remaindermen in Vernon Daniels' will. The Court of Appeals, in an unpublished decision filed February 2, 1990, reversed and held Vernon's daughter, Dee Ann Roshong, had the power to appoint all trust assets to herself. We granted the petition for review.

Vernon Daniels and Dora Daniels, husband and wife, executed their individual wills on December 12, 1974. Vernon established two testamentary trusts known as Vernon E. Daniels Trust No. 1 (Trust No. 1) and Vernon E. Daniels Trust No. 2 (Trust No. 2). Trust No. 1 was to equal the maximum marital deduction allowable at the time of Vernon's death. Trust No. 2 included the residue of Vernon's estate.

Vernon gave all his property, in trust, to Guaranty, as trustee, for the use and benefit of Dora and Dee. The entire net income of Trust No. 1 was payable to Dora during her lifetime. Vernon's will also granted Dora the power to appoint the corpus of Trust No. 1. Trust No. 2 was held for the benefit of Dora and after her death for the benefit of Dee.

Vernon's will further granted Dee the power to appoint the entire corpus of Trust No. 2 to herself:

"XXIV

"My daughter shall, after the death of my wife, have the right and power by will or other instrument in writing *to appoint the entire corpus of the Vernon E. Daniels Trust No. 2, or any part thereof, to herself,* to her estate, or to any other person or persons, free of this trust. Said right and power to appoint is expressly made exercisable by the said Dee Ann Roshong alone." (Emphasis added.)

Dora executed her will on the same date and exercised the power of appointment granted in Vernon's will:

"III

"In the Will of Vernon E. Daniels, my husband, in Paragraph IX thereof, it is provided:

" 'My said wife shall have the right and power by will or other instrument in writing to appoint the entire corpus of said trust, or any part thereof, to herself, to her estate, or to any other person or persons, free of this trust. Said right and power to appoint is expressly made exercisable by the said Dora Dell Daniels alone, at any time, and in all events.'

"I hereby exercise the power of appointment thereby vested in me and hereby give all of the property of which I die seized unto the Guaranty State Bank and Trust Company, Beloit, Kansas, *in trust, nevertheless, for the use and benefit of my daughter, Dee Ann Roshong, as provided under the Vernon E. Daniels Trust No. 2 in the Last Will and Testament of Vernon E. Daniels dated December 12, 1974.*" (Emphasis added.)

On April 2, 1980, Vernon executed a codicil revoking paragraph XXIV of his will and substituting the following provision:

"My daughter, after the death of my wife, shall have the right and power by Will or other instrument in writing to appoint one-half of the corpus of the Vernon E. Daniels Trust No. 2 to a husband or a child by birth or adoption but only if the adoption is of a minor. This right and power to appoint is made exercisable by my daughter, Dee Ann Roshong, alone. If Dee Ann Roshong does not appoint as above provided, then the entire corpus of the Vernon E. Daniels Trust No. 2 shall be distributed under the next succeeding provision."

The remaining one-half of the corpus of Trust No. 2 was to be distributed to named remaindermen, the appellees.

Vernon died June 14, 1980, and his will was admitted to probate in Mitchell County, Kansas. Dora died on August 7, 1985, and her will was also admitted into probate in Mitchell County, Kansas.

On October 15, 1986, Dee exercised the power of appointment granted to her in Vernon's will and appointed the entire corpus of Trust No. 1 to herself. Guaranty, acting as testamentary trustee of Vernon's trusts, filed a petition in district court alleging that Dora had not exercised the power of appointment provided under Vernon's will and sought a determination of whether Dee could appoint to herself all the assets of Trust No. 1 and a determination of the extent of Dee's power of appointment over Trust No. 2.

The magistrate judge determined Dee had no power to appoint Trust No. 1 because Dora had exercised her power of appointment which brought all assets under the control of Vernon's codicil. The magistrate further ruled that under Vernon's codicil Dee had only the power to appoint one-half the corpus of Trust No. 2 and had no power to appoint the assets to herself. Additionally, the court determined Dee was entitled only to the income of Trust No. 1 and could not invade the principal, all in accordance with paragraph XX of Vernon's will. Both the remaindermen and Dee appealed the magistrate's rulings.

The district court found that Dora properly exercised the power of appointment granted in Vernon's will. The district court also determined that Dora gave her property, not to Trust No. 2, but to Guaranty for the use and benefit of Dee as provided under Vernon's Trust No. 2. Thus, the court ruled that K.S.A. 59-3101, which authorizes pour-over trusts, was not applicable because Dora's gift was not a testamentary addition to Trust No. 2; rather, it was the creation of a new trust to be administered under the provisions of Trust No. 2.

The district court further ruled that Dora's power of appointment, which incorporated provisions of Vernon's will, was not to the exclusion of Vernon's codicil. Since Vernon's will was properly executed and subject to change, the subsequent codicil materially changed Dee's power of appointment, limiting the power to appoint to only one-half the corpus of Trust No. 1 and Trust No. 2 to a husband or child. Thus, the court found Dee's attempt to appoint all the assets of Trust No. 1 to herself invalid.

Finally, the district court determined Dee was entitled only to the income from the two trusts and that reasonable attorney fees should be paid from the corpus of the trusts.

Dee appealed the district court rulings. The Court of Appeals found that K.S.A. 59-3101 was applicable because Dora intended to pour over the assets from Trust No. 1 into Trust No. 2. However, because Dora's will provided for a different disposition than Vernon's codicil, the court ruled the testators failed to "act in concert" and thereby rendered the pour-over provisions inoperative. Thus, the Court of Appeals found Dee had the power to appoint to herself all the assets of either trust.

The Court of Appeals further ruled the remaindermen's attorney fees should not be paid from the trust assets. The court concluded that the remaindermen were not successful and did not defend the action for the ultimate recipients of the estate as required by K.S.A. 59-1504. We granted the remaindermen's petition for review.

Our first inquiry is whether Dora's will established a pour-over trust pursuant to K.S.A. 59-3101, or whether she created a trust separate and distinct from Vernon's Trust No. 2.

K.S.A. 59-3101 provides in part:

"[A] devise or bequest . . . may be made by a will to the trustee or trustees of a trust established or to be established by the testator . . . or by some other person or persons . . . if the trust is identified in the testator's will and its terms are set forth . . . in the valid last will of a person who has predeceased the testator . . . . The devise or bequest shall not be invalid because the trust is amendable or revocable, or both, *or because the trust was amended after the execution of the will or after the death of the testator. Unless the testator's will provides otherwise, the property so devised or bequeathed (a) shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given,* and (b) shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust, *including any amendments thereto made before the death of the testator (regardless of whether made before or after the execution of the testator's will)* : . . . ." (Emphasis added.)

The pour-over trust issue is one of first impression in Kansas. Early on, the validity of pour-over trusts was unclear, but due to the need in estate planning, courts began to utilize several theories to validate their provisions. Incorporation by reference and independent legal significance were the doctrines most often adopted to validate the pour-over provisions. See IA Scott on Trusts §§ 54.1, 54.2 (Fratcher 4th ed. 1987); Bogert, Trusts and

Trustees § 105 (2d ed. rev. 1984); *Shulsky v. Shulsky*, 98 Kan. 69, 72-73, 157 Pac. 407 (1916). In 1968, the Kansas Legislature adopted the Uniform Testamentary Additions to Trusts Act, K.S.A. 59-3101 *et seq.*, putting to rest any further reliance on the doctrine of incorporation by reference to validate pour-over trusts. See Note, *Trusts—Pour-Over From a Will To An Inter Vivos Trust*, 8 Washburn L.J. 81, 91 (1968).

A pour-over trust is the disposition of property in a will to an established trust. In the present case, Dora exercised the power of appointment granted in Vernon's will and in paragraph III of her will directed that all property of which she died seized be given to Guaranty, in trust, for the use and benefit of Dee "as provided under the Vernon E. Daniels Trust No. 2 in the Last Will and Testament of Vernon E. Daniels dated December 12, 1974." This is a standard pour-over trust technique.

The primary function of a court in interpreting a will is to ascertain the testator's intent as derived from the four corners of the will and to construe the will to give effect to the intention. *Drach v. Ely*, 237 Kan. 654, 656-57, 703 P.2d 746 (1985); *Dittmer v. Schmidt*, 235 Kan. 697, 700, 683 P.2d 1252 (1984); *In re Trust Estate of Rivas*, 233 Kan. 898, 903, 666 P.2d 691 (1983).

Dee contends Dora's intent was to incorporate the terms of Trust No. 1 as provided in Vernon's will into her own and create a new trust for the corpus of Trust No. 1. Thus, argues Dee, the assets of Trust No. 1 did not pour over into Trust No. 2 and she had the authority to appoint to herself all the assets of Trust No. 1 pursuant to paragraph XXIV of Vernon's will.

An informative discussion on the problems arising from a third-person attack to an existing trust appears in Note, *Trusts: Additions: Augmentations by Persons Other Than The Settlor*, 48 Cornell L.Q. 585, 585-86 (1963). Some support for Dee's argument that a new trust was created does exist. In *Bemis v. Fletcher*, 251 Mass. 178, 146 N.E. 277 (1925), the testator's will provided that the residue of her estate should be given to the trustee named in her husband's will "to be administered with the same rights and powers, and to be disposed of to the same persons or corporations in the same manner 'as shall be provided for the trust established' by her husband's will." 251 Mass. at 184. The Massachusetts court determined the testator's intent

was to incorporate the provisions of her husband's will into her own. 251 Mass. at 186. The court concluded the testator established a valid "referential" trust; a trust separate and distinct from the husband's but administered by the same persons and distributed to the same persons. 251 Mass. at 188.

In *Matter of Barlow,* 144 Misc. 210, 258 N.Y.S. 451 (1932), a son provided in his will that certain property should be disposed of as provided in his father's will, "in the same manner and proportion." 144 Misc. at 211. The New York court found that the son validly incorporated the father's will into his own and concluded there was no distinction in creating a new trust and utilizing one already in existence. 144 Misc. at 212.

Although the above-cited cases provide some support for Dee's argument, we are bound by our own statute, K.S.A. 59-3101. After close examination of the language utilized in Dora's will, we find that Dora intended to pour over her assets into Vernon's trust.

Dora and Vernon executed their wills on the same date. Dora referred to Vernon's Trust No. 2 of December 12, 1974, in order to identify the trust to which she was making a testamentary disposition. The terms of the trust to which she referred were set forth in the valid last will of Vernon. All of the factors indicate Dora intended to follow K.S.A. 59-3101. Furthermore, Dora did not provide for additional or different terms than those set forth in Vernon's Trust No. 2, nor did she provide any indication of an intent to create a new and separate trust. In fact, there was no reason for Dora to create a separate and distinct trust where Dee would be the named beneficiary in each trust. One of the primary purposes of pour-over trusts is to facilitate administration of the trust by consolidating all family assets. Finally, we look to the language of K.S.A. 59-3101 and find that the devised or bequeathed property "shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given," unless otherwise provided in the testator's will. Dora did not provide specific language in her will devising and bequeathing her property to a trust separate from Vernon's Trust No. 2. Rather, Dora poured over her property into the Vernon Daniels Trust No. 2 pursuant to the authority granted in K.S.A. 59-3101.

Our conclusion that Dora poured over her property into Vernon's trust makes that trust's provisions control, and thus Dee lacked authority to appoint to herself all the assets of Trust No. 1 and Trust No. 2. It is argued that Dora's failure to consent to the codicil to Vernon's will, coupled with Dora's reference in her will to Vernon's will of December 12, 1974, indicates that Dora intended to create a separate trust. We reject this argument. Had Dora been dissatisfied with Vernon's codicil, she had five years after his death to change her will. She did not do so, indicating her acquiescence in it. Also, there is no requirement that the party who creates the trust and the other person who pours over assets into it act in concert. K.S.A. 59-3101 provides that a gift to a trust, established by will, is valid even when the trust is amended after the testator's will is executed. The pour-over statute explicitly states the trust "shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust, *including any amendments thereto made before the death of the testator (regardless of whether made before or after the execution of the testator's will).*" Thus, it is clear that Dora's pour over of assets into Vernon's trust is controlled by Vernon's will and codicil.

Vernon's will, setting forth the terms of Trust No. 2, granted Dee the power to appoint the entire corpus of Trust No. 2 to herself. Vernon's codicil, however, limited Dee's power of appointment to one-half the corpus of Trust No. 2 to "a husband or child by birth or adoption but only if the adoption is of a minor." Trust No. 2 included the assets of Trust No. 1 after Dora's death due to her exercise of power of appointment granted in Vernon's will. Thus, in accordance with the mandates of K.S.A. 59-3101, Dee was entitled to appoint only one-half the corpus of Trust No. 2, which included the corpus of Trust No. 1, and could not make such appointment to herself under the provisions of Vernon's codicil. Therefore, we hold that Dee's attempt to appoint the entire corpus of Trust No. 1 to herself is invalid and that the remaindermen are entitled to one-half the corpus of Trust No. 2.

Finally, the remaindermen contend the Court of Appeals erroneously ruled that their attorney fees should not be paid from trust assets.

K.S.A. 59-1504 provides in pertinent part:

"Any heir at law or beneficiary under a will who, in good faith and for good cause, successfully prosecutes or defends any other action for the benefit of the ultimate recipients of the estate may be allowed his or her necessary expenses, in the discretion of the court, including a reasonable attorney's fee."

Based upon its ruling that Dee was entitled to appoint all the assets of Trust No. 1 and Trust No. 2 to herself, the Court of Appeals held that the remaindermen were not successful and did not act for the benefit of the ultimate recipients.

In *In re Estate of Hannah*, 215 Kan. 892, 529 P.2d 154 (1974), we construed the provisions of a testamentary trust established in a testator's will. The heirs at law of the primary beneficiary of the trust argued they were entitled to attorney fees pursuant to K.S.A. 59-1504. We found it proper to reimburse the heirs for reasonable attorney fees on the premise that it is beneficial to an estate to have questions of law determined where there is doubt as to the proper construction of a will. 215 Kan. at 900.

In the present case, there arose considerable doubt as to the proper construction of Vernon's and Dora's wills. Thus, the remaindermen conferred a substantial benefit on the estate in bringing this action. Furthermore, the remaindermen were ultimately successful in their pursuit to ascertain Dora's intent as to the disposition of property.

Dee's reliance upon *Reznik v. McKee, Trustee*, 216 Kan. 659, 534 P.2d 243 (1975), to deny the remaindermen attorney fees from the trust assets is misplaced. *Reznik* dealt with a claim against an estate based upon contract. We held that nothing in K.S.A. 59-1504 contemplates the allowance of attorney fees incurred in an action in probate for specific performance of a contract. 216 Kan. at 682 (citing *In re Estate of Davis*, 171 Kan. 605, 613, 237 P.2d 396 [1951]).

We conclude the remaindermen brought this action in good faith and for good cause. The remaindermen's action benefited the estate in that it required construction of Dora's will. Finally, the remaindermen have been successful in their endeavor and are therefore entitled to reasonable attorney fees, costs, and expenses.

The judgment of the district court is affirmed in part and reversed in part, and the judgment of the Court of Appeals is affirmed in part and reversed in part.

ABBOTT, J., not participating.