No. 123,782

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GARY A. CULLISS,
*Appellant*,

v.

BRIAN R. CULLISS, as Trustee of the
JULIA A. CULLISS TRUST,
*Appellee*.

1.

Generally, a trust beneficiary may void a transaction involving trust property which is affected by a conflict between the trustee's fiduciary and personal interest, without further proof. But an exception to that rule applies when the terms of the trust expressly or impliedly authorize the transaction. K.S.A. 2021 Supp. 58a-802(b)(1).

2.

In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, has broad discretion to award reasonable attorney fees to any party, to be paid by another party or from the trust that is the subject of the controversy. K.S.A. 58a-1004.

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Opinion filed June 17, 2022. Affirmed.

*Michael R. Ong*, of Ong Law Firm, P.A., of Overland Park, for appellant.

*Jeffrey R. King* and *Caleb F. Kampsen*, of Sage Law, LLP, of Overland Park, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

1

GARDNER, J.:  Trust beneficiary, Gary Culliss, appeals the district court's denial of his motion for partial summary judgment on issues related to the distribution of real property of his mother's estate. Gary argues that his brother, Brian Culliss (trustee and co-beneficiary), breached his fiduciary duties as trustee by conveying ownership of certain real property to himself while paying Gary cash equal to the property's value. Gary claims he was entitled to sole or joint ownership of the property and the district court erred by finding the trust waived Brian's duty of loyalty. Gary also challenges the district court's valuation of the properties and its order that he pay attorney fees. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Overview of the Testamentary Instruments*

Julia Culliss executed a trust and will in March 2009; she died in June 2018. She appointed her oldest son, Brian, to act as trustee and executor. She named Brian and his brother, Gary, the beneficiaries of her estate.

According to its terms, Julia's trust was "to provide for the management of [her] property during [her] lifetime and at [her] death to reduce taxes and transfer cost of [her] property and provide for the management of the property and its orderly disposition to the proper persons at the proper times." The trust directs the trustee to distribute Julia's "tangible personal property to [Julia's] surviving issue *per stirpes*." If a disagreement occurs regarding the distribution of Julia's tangible personal property, the trust gives the trustee "the discretion to either divide the property . . . as equitably as possible, taking into account their personal preferences, and/or sell such assets and add the proceeds to the remainder." The trustee must then divide the remainder equally between the beneficiaries.

2

The trust provision at the center of this appeal is this "cash and in-kind distributions" provision:

> "Except where there are directed dispositions of specific assets, Trustee may make any distribution in cash or in kind (including non-*pro rata* in kind distributions) or a combination thereof. Distributions are to be valued at the recognized market value at the date of distribution. If there is no generally recognized market value, Trustee may conclusively make a determination of such value. Trustee shall have power to make allocations of assets without regard to the income tax basis of specific property."

Julia included the same language in her will directing her executor (Brian) regarding the disposition of assets, and incorporated the provisions of the trust into her will, giving "all of [her] estate" to Brian, as the trustee, "to dispose of under the terms of the Trust."

*Dispute over the Lake Properties*

The parties agree that, at the time of her death, Julia owned two adjacent properties in Gravois Mills, Missouri—the Lake Properties. But Julia made no specific directions about those properties in her will or her trust. So when she died, the Lake Properties became part of "the remainder" of her estate.

Gary and Brian both wanted to own the Lake Properties. Gary agreed to joint ownership if necessary, but Brian did not. Brian created a proposed distribution plan as trustee, seeking sole ownership of the Lake Properties and offering to pay Gary an amount of cash equal to the value of the properties.

Gary petitioned for declaratory judgment, claiming that Brian's proposed distribution breached his fiduciary duties as trustee. In later briefs, Gary specified that Brian's proposal violated his duties as trustee under K.S.A. 58a-801 (the duty to

3

administer the trust in good faith and in accordance with the Kansas Uniform Trust Code); K.S.A. 2021 Supp. 58a-802 (the duty of loyalty to the trust beneficiaries); K.S.A. 58a-803 (the duty to act impartially); and K.S.A. 58a-814 (limiting trustee discretion). Brian responded that the distribution plan followed the terms of the trust—specifically its non-pro rata clause—and his duties as trustee. Gary replied that the non-pro rata clause was just boilerplate language and that Julia intended the trust to be administered to equally benefit both brothers. Gary also argued that because the trust did not expressly waive Brian's duty to act as a prudent investor or his duty of loyalty to the trust beneficiaries, those duties prevented Brian from distributing the Lake Properties to himself.

At the hearing, the parties agreed to consider Gary's petition as a motion for partial summary judgment. After considering the parties' claims through that lens, the district court denied Gary's claim, finding that the trust gave Brian the authority to distribute the Lake Properties as he proposed and that doing so did not violate Brian's duties as trustee.

*Valuation Proceedings*

Gary also moved the court to determine the value of the Lake Properties, and the district court considered that issue at a separate hearing.

Brian had the Lake Properties appraised by a certified real estate appraiser, Michael McClain. McClain testified that he had appraised the properties three times and had valued the properties together at $177,000 each time. McClain determined that the highest and best use of the properties was as a single parcel. He explained that although a person could legally separate the two lots, doing so would decrease the value of each lot. McClain explained that one of the two lots had a house on it, and Julia had bought the second lot to get better access to the lake. Both lots shared a single dock, but the first lot would need access to the second lot and its portion of the dock to get a boat on the water.

4

And the second lot could have a dock only by encumbering the first lot, which could significantly affect the value of the second lot.

Gary testified about the positioning of the docks and the value the properties held separately. He stated that a purchaser could remove a portion of the existing dock and rearrange separate docks to allow each lot appropriate access to the lake. Gary thought the properties had separate water and sewer rights, which would allow independent development of the properties, and he believed the lots would be more valuable if sold separately.

Although Gary had obtained separate appraisals for each lot, his appraiser did not testify. Instead, Gary admitted exhibits of two appraisals valuing the Lake Properties separately. Those exhibits showed the value of the lot with the house as $175,000 and the other lot as $51,500. Based on these appraisals, Gary had offered to purchase the Lake Properties from the trust for $226,100 and he was still willing to purchase the properties at that price.

In closing, Brian explained that he had offered to stipulate to a value between his appraiser's value and the value Gary had offered or to get a new appraisal from a third party, but Gary had rejected those offers. Brian then argued that the trust authorized the trustee to overrule any disagreement about the value because its non-pro rata clause gave the trustee discretion to make distributions based on "the recognized market value" but if there was none the trustee could "conclusively . . . determin[e] . . . such value."

The district court accepted Brian's valuation, finding McClain's explanation about the highest and best use of the Lake Properties as a single parcel more compelling than the information from Gary's appraisals. The court also found that even though Gary had offered to purchase the Lake Properties at a higher value, Brian did not have to accept that value.

5

*Attorney Fee Proceedings*

At the close of the valuation hearing, the district court found that the parties had failed to provide the evidence necessary to determine attorney fees. After extensive briefing, the district court held another hearing. Gary argued that Brian should be held personally responsible for his attorney fees because he had pursued his own interests by his proposed distribution of the Lake Properties and had not acted on behalf of the trust.

But the district court disagreed and awarded Brian the attorney fees he had incurred throughout the litigation over the Lake Properties. And the court ordered Gary to reimburse the trust for those fees. And as to further fees, the district court stated:

> "In addition, should the Court approve any further fees of the [trustee's] Firm for services [that] were incurred that relate to this judicial proceeding, Gary Culliss will be ordered to pay some or all of those fees within thirty days of the entry of that Order.

*Amended Attorney Fees Proceedings*

Brian moved to alter or amend the district court's attorney fees order, claiming the exhibit he had given the district court inaccurately showed his fees. He provided an updated version of the exhibit, listing his requested fees. The district court granted that motion and entered an amended order approving the additional amount. It found Brian's fees were fair and reasonable and ultimately approved both Brian's original request for $35,330.96 and his request for another $3,738. The court again ordered Gary to reimburse the trust for the total amount accrued during the litigation over the Lake Properties.

Gary timely appeals, challenging the district court's decision that Brian could own the Lake Properties, its valuation of the Lake Properties, and its award of attorney fees.

6

DID THE DISTRICT COURT ERR IN APPROVING THE TRUSTEE'S PROPOSED DISTRIBUTION OF THE LAKE PROPERTIES?

Gary first argues that the district court should have voided Brian's distribution of the Lake Properties to himself against Gary's wishes because doing so breached Brian's duty of loyalty to trust beneficiaries. Gary also claims that the district court based its decision to allow this distribution on its erroneous finding that the trust agreement waived Brian's duty of loyalty, contrary to this court's decision in *Roenne v. Miller*, 58 Kan. App. 2d 836, 475 P.3d 708 (2020) (finding a trust cannot waive a trustee's duty of loyalty), *rev. denied* 312 Kan. 893 (2021).

Brian contends that Gary mischaracterizes K.S.A. 2021 Supp. 58a-802's duty of loyalty and the district court's holding. Brian concedes the duty of loyalty applied to him but contends the district court correctly found he did not violate that duty because he properly relied on a trust provision expressly authorizing his acts and fairly distributed the estate property.

*Standard of Review and Basic Legal Principles*

Because the district court decided this matter as a motion for partial summary judgment, we outline our appellate summary judgment standards:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

7

issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

When, as here, the parties do not dispute the facts relevant to the legal issues raised, this court's review of an order granting or denying a motion for summary judgment is unlimited. *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1311-12, 429 P.3d 212 (2018). Similarly, this court exercises unlimited review over the district court's interpretation of statutes and trust terms. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) (statutes); *Hemphill v. Shore*, 295 Kan. 1110, Syl. ¶ 2, 289 P.3d 1173 (2012) (trusts).

When interpreting a trust, a court's primary duty is to determine the settlor's intent by reading the trust as a whole. If that intent can be found out from the express terms of the trust, the court must carry out those terms unless they conflict with law or public policy. *Hamel v. Hamel*, 296 Kan. 1060, 1068, 299 P.3d 278 (2013). Courts have limited authority to intervene in matters properly left to a trustee's discretion through valid trust terms:

> "Where the instrument creating a trust gives the trustee discretion as to its execution, a court may not control its exercise merely upon a difference of opinion as to matters of policy, and is authorized to interfere only where the trustee acts in bad faith or its conduct is so arbitrary and unreasonable as to amount to practically the same thing." *Jennings v. Murdock*, 220 Kan. 182, Syl. ¶ 1, 553 P.2d 846 (1976).

### *Trustees' Duties and Discretion*

The parties agree that this case involves a discretionary trust, in which Julia left Brian wide discretion as trustee to distribute the trust property. See *Simpson v. Kansas*

*Dept. of SRS*, 21 Kan. App. 2d 680, 684, 906 P.2d 174 (1995) (defining discretionary trusts). The trust allowed Brian to distribute the portion of Julia's estate that she did not specifically direct to distribute otherwise—including the Lake Properties—in his "sole and absolute discretion." The trust also provided that "[e]xcept where there are directed dispositions of specific assets, Trustee may make any distribution in cash or in kind (including non-*pro rata* in kind distributions) or a combination thereof."

Gary claims that regardless of the degree of discretion the trust gave Brian, Brian's duty of loyalty as trustee prevented him from distributing the Lake Properties solely to himself. Gary argues that the distribution was voidable because it was affected by conflict between Brian's interests as trustee and a beneficiary. See K.S.A. 2021 Supp. 58a-802(b). Brian counters that his proposed distribution was not voidable simply because Gary did not prefer it, asserting that this statute does not give "a dissenting beneficiary *de facto* veto power over an otherwise authorized distribution."

In deciding this issue, we first look to the Kansas Uniform Trust Code (KUTC), which prescribes the statutory duties and powers of trustees. K.S.A. 2021 Supp. 58a-802 establishes the duty of loyalty:

> "(a) A trustee shall administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries.
> "(b) . . . [A] sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:
> (1) The transaction was authorized by the terms of the trust."

Gary relies on the general rule in subsection (b) that a beneficiary may void a transaction involving trust property which is affected by a conflict between the trustee's fiduciary and

9

personal interest. Brian relies on the exception to that rule, arguing that "[t]he transaction was authorized by the terms of the trust." K.S.A. 2021 Supp. 58a-802(b)(1).

The comment to subsection (b) of the statute explains that it establishes a "no further inquiry rule":

> "Subsection (b) states the general rule with respect to transactions involving trust property that are affected by a conflict of interest. A transaction affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary who is affected by the transaction. Subsection (b) carries out the 'no further inquiry' rule by making transactions involving trust property entered into by a trustee for the trustee's own personal account voidable without further proof. Such transactions are irrebuttably presumed to be affected by a conflict between personal and fiduciary interests. It is immaterial whether the trustee acts in good faith or pays a fair consideration. *See* Restatement (Second) of Trusts Section 170 cmt. b (1959)." Uniform Trust Code Comments, K.S.A. 58a-802.

See, e.g., Restatement (Third) of Trusts § 78, comments b-c (2007) (describing the no further inquiry rule as imposing an irrebuttable presumption of voidability to self-dealing transactions).

Our appellate courts have not often addressed this statute, but a panel of this court addressed the duty of loyalty under different facts in *Roenne*. There, beneficiaries of decedent's testamentary trust sued the trustee/beneficiary, alleging that the trustee had breached his fiduciary duties by taking *all* the trust assets for himself and his wife. The trial court found no breach of fiduciary duties because the trust stated that the trustee had "uncontrolled" or "exclusive" discretion over the trust. But this court reversed and remanded for further proceedings, holding that a trustee could not act as if there were no trust, and that the trustee had breached his duties of loyalty, impartiality, and prudence to plaintiffs. 58 Kan. App. 2d at 850-54.

10

The panel in *Roenne* characterized the conflict as "a permissible grantor-created conflict of interest that should be respected," but warned "the trustee's conduct should 'be closely scrutinized for abuse, including abuse by less than appropriate regard for the duty of impartiality.' Restatement (Third) of Trusts § 79, comment b(1) (2007)." 58 Kan. App. 2d at 848.

> "The various cases that have dealt with these laws have all recognized that while the intent of the grantor is paramount, the law limits a trustee. Even where the grantor intended the trustee to have as much power as possible over the trust, the law restricts that power. See *In re Ralph E. Breeding Trust*, 21 Kan. App. 2d 351, 357-58, 899 P.2d 511 (1995). The trustee must act in good faith and in the interests of the beneficiaries. While a trust can eliminate strict prohibitions, such as that against self-dealing, it cannot eliminate the duty of loyalty. That limit preserves the fundamental fiduciary character of trust relationships recognized by law. *Schartz v. Barker*, No. 104,812, 2013 WL 189686, at *10 (Kan. App. 2013) (unpublished opinion) (quoting Restatement [Third] of Trusts § 78, comment c[2], p. 99 [2005])." 58 Kan. App. 2d at 847.

So even if a trust authorizes a conflict-of-interest transaction, the trustee must still act "in good faith in the interests of the beneficiaries." 58 Kan. App. 2d at 850. Thus, the "'uncontrolled discretion'" granted to the trustee in *Roenne* did "not relieve him from his fiduciary duties as a trustee to act impartially in the interests of all the beneficiaries, rather than just himself." 58 Kan. App. 2d at 850.

Although the district court's written order, filed before *Roenne*, suggested the trust could waive Brian's duty of loyalty, the district court did not rely on that finding alone in denying Gary's motion for partial summary judgment. Rather, the district court correctly determined that Brian acted within the authority provided through the trust and his duties as trustee, as we explain below. So even if the district court found the trust could waive Brian's duty of loyalty, that error was harmless.

11

*Brian's Conflict of Interest*

We agree that Brian's distribution of the Lake Properties to himself evidenced a conflict of interest between his interests as trustee and his interests as a beneficiary. In short, Brian was wearing two hats and could not enter a transaction that prejudiced the beneficiaries. Because Gary was a beneficiary affected by the transaction, he could void the transaction without further proof, even if Brian gave Gary fair consideration for those properties, *unless* the trust authorized the transaction. K.S.A. 2021 Supp. 58a-802(b)(1).

*Trust Created a Conflict of Interest*

After recognizing that the trust gave Brian the authority to make "'any distribution in cash or in kind (including non-pro rata in kind distribution),'" the district court found that Julia intended to give Brian the ability to resolve this type of dispute:

> "This language shows the grantor recognized that, after her death, a circumstance might
> arise where an asset might be subject to dispute about how it should be distributed. With
> this provision, the grantor gave the Trustee the discretion to not divide each asset evenly,
> but keep an asset, like this real estate, undivided and distributed to one beneficiary, so
> long as the other beneficiary received an 'in [cash] or in kind' distribution of the same
> value."

We agree.

True, no trust term expressly addressed the Lake Properties. But the trust term permitting non-pro rata in kind distribution authorized Brian's proposed distribution of them. Although the distribution was voidable because Brian's dual status as a trustee and a beneficiary created an inherent conflict of interest, our law allows conveyances despite conflicting interests if the transaction is authorized by the trust. K.S.A. 2021 Supp. 58a-802(b)(1). And a "'trustee who acts in reasonable reliance on the terms of the trust as

12

expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance.'" *Mead v. Small, Trustee of Herlinda Small Revocable Living Trust*, No. 122,511, 2021 WL 2021199, at \*7 (Kan. App. 2021) (unpublished opinion); see K.S.A. 58a-1006.

Although Julia did not expressly grant the trustee the power to act in a dual capacity, she created Brian's divided loyalty by knowingly placing him in a position in which his interest as trustee/beneficiary might conflict with the interest of the only other beneficiary. Julia knew that her estate included the Lake Properties, and she was familiar with how her sons had used them. She knew that she had only two beneficiaries and she chose one of them to act as trustee. Yet Julia did not specifically direct that the Lake Properties be distributed to one of her sons, or that the properties be co-owned, or that any beneficiary could occupy or use those properties during some or all of the trust period. She thus intended for those properties to pass under the non pro rata clause in her trust, which permitted the trustee to "make any distribution in cash or in kind (including non-pro rata in kind distributions) or a combination thereof." As trustee, Brian did so.

When, as here, a settlor expressly or impliedly creates a conflict of interest by the terms of the trust, the beneficiary must generally prove more than divided loyalty.

> "'Where a conflict of interest is approved or created by the testator, the fiduciary will not be held liable for his conduct unless the fiduciary has acted dishonestly or in bad faith, or has abused his discretion. Further, where the will approves the conflict of interest, the burden of proof remains on the party challenging the fiduciary's conduct as there is no presumption against the fiduciary despite the divided loyalty.'" Restatement (Third) of Trusts § 78, comment c(1) (2007) (quoting *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 304, 609 N.E.2d 997 [1993]).

See *Tankersley v. Albright*, 374 F. Supp. 538, 543 (N.D. Ill. 1974) (finding conflicts of interest generally are prohibited but this proscription is subject to modification by settlor;

mere existence of a conflict does not automatically require a prohibition of trustees' planned action where trust instrument creates conflict), *aff'd in part, rev'd in part* 514 F.2d 956 (7th Cir. 1975); *Clayton v. James B. Clow & Sons*, 212 F. Supp. 482, 505 (N.D. Ill. 1962) (finding that a fiduciary is not always precluded from self-dealing with trust property where settlor did not so intend, especially where testator knowingly placed his trustee in a position which he knew might conflict with interest of trust), *aff'd* 327 F.2d 382 (7th Cir. 1964); *In re Flagg's Estate*, 365 Pa. 82, 88-89, 73 A.2d 411(1950) (finding that existence of a conflict of interest did not ipso facto disqualify trustee from acting, and that bad faith, rather than a mere conflict of interest, was determinative factor where the will created the conflict).

Unlike the trustee in *Roenne*, Brian pointed to valid trust provisions he reasonably relied on to distribute the Lake Properties without breaching his duty of loyalty. Brian neither disregarded Gary's interests nor converted trust assets to only his personal use. Compare 58 Kan. App. 2d at 848-50. And unlike the trustee in *Roenne*, Brian considered Gary's interest in the Lake Properties and proposed a plan that created an equal financial distribution of the Lake Properties. Here, we have an implicitly approved trust-created conflict between a trustee who is also a beneficiary, so "there is, on the one hand, some inference of a preference for or confidence in the trustee-beneficiary but, on the other hand, a general recognition that a trustee-beneficiary's conduct is to be closely scrutinized for abuse, including abuse by less than appropriate regard for the duty of impartiality." Restatement (Third) of Trusts § 79, comment (b)(1) (2007).

For a court to force co-ownership of real property in this situation, when the trustee/beneficiary and the sole remaining beneficiary cannot agree to jointly own the property, would be as unworkable as a divorce court's order forcing the parties to share real property despite their professed incompatibility. The more reasonable solution is to award the property to one beneficiary and to make the other whole financially. But a

14

court is poorly suited under these circumstances to determine which of two competing beneficiaries should own real property. Here, both the trustee/beneficiary and the other beneficiary claim to have the power to choose ownership. Yet it is the settlor, not the court or the beneficiaries, who decides that matter. As settlor, Julia decided that the trustee, Brian, could "make any distribution in cash or in kind (including non-*pro rata* in kind distributions) or a combination thereof." And a settlor's designation of the beneficiary-trustee may generally suggest a "tilt" in favor of the beneficiary-trustee in the balancing of divergent interests. See Restatement (Third) of Trusts § 78, comment c(2).

Having closely scrutinized Brian's conduct for abuse, we find Brian acted fairly and complied with the terms of the trust and his duties of loyalty and impartiality. Under the circumstances, Gary fails to show that Brian breached his fiduciary duties as trustee or that the district court committed reversible error in denying his motion for partial summary judgment.

DID THE DISTRICT COURT ERR BY APPROVING BRIAN'S VALUATION OF THE PROPERTIES?

Gary next challenges the value approved for the Lake Properties. He claims the district court had to accept his "bona fide offer" of $226,100 as the value of the properties over Brian's lower appraised value of $177,000.

We first consider Gary's argument that Brian's valuation wrongly deprived the trust of $49,100, violating his duty to act as a "prudent investor" under the Kansas Uniform Prudent Investor Act, and breaching his duties of loyalty and impartiality under that Act. See K.S.A. 58-24a02(a). But we agree with Brian that those provisions apply when trust assets are being invested or managed. See, e.g., K.S.A. 58-24a01 (requiring "a fiduciary who invests and manages trust assets" to comply with the prudent investor rule); K.S.A. 58-24a02(a) (requiring a fiduciary to "invest and manage trust assets as a prudent investor would"); K.S.A. 58-24a02(b) (regulating a fiduciary's "investment and

15

management decisions" respecting individual assets). Gary fails to show that the Act applies here to a trustee's decision about which of two beneficiaries should own an estate's real property.

Gary also generally argues that the district court should have deferred to his valuation over Brian's because it was higher. But he provides no legal support for this argument. Further, the trust permitted Brian, as trustee, to set a value for the Lake Properties if no generally accepted market value existed. Because the appraisers disagreed as to value and as to the highest and best use of the Lake Properties, that clause applied here.

Still, the value of real property is a finding of fact for the district court to make. See *In re Estate of Hjersted*, 285 Kan. 559, 569, 175 P.3d 810 (2008). We thus review the district court's order approving Brian's valuation of the Lake Properties for substantial competent evidence. See *In re Estate of Lentz*, No. 118,307, 2021 WL 3573844, at *7 (Kan. App.) (unpublished opinion) (listing cases considering value a question of fact and applying this standard of review), *rev. denied* 314 Kan. 854 (2021).

> "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *In re Estate of Farr*, 274 Kan. 51, 58, 49 P.3d 415 (2002).

When determining this matter, "an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. We also accept as true all inferences to be drawn from the evidence which support or tend to support the findings of the district court." *Hjersted*, 285 Kan. at 571. If the evidence, when considered in the light most favorable to the prevailing party, supports the district court's

16

judgment, this court will not disturb that judgment on appeal. *In re Estate of Engels*, 10 Kan. App. 2d 103, 110, 692 P.2d 400 (1984).

Our review of the record shows substantial competent evidence supporting the district court's valuation. At the valuation hearing, McClain explained why he believed the highest and best use of the properties was as a single parcel whose fair market value was $177,000. Although Gary provided competing appraisal reports, the district court had good reason to find that they did not sufficiently address the impact that separating the properties might have on their value. The transaction was fair to the beneficiaries and the trust, as it was for a fair and adequate consideration. We find no reason to set aside the district court's findings.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY AWARDING AND ALLOCATING ATTORNEY FEES AGAINST GARY?

The district court awarded Brian $42,069.96 in attorney fees to be paid by the trust. The court assigned $35,330.96 of that amount to the litigation over the Lake Properties and ordered Gary to reimburse the trust that amount. The parties agreed that $3,001 of that amount should be paid as administrative expenses, but Gary challenges the district court's order for him to pay the remaining amount.

Gary maintains that Brian's decision not to distribute the Lake Properties jointly as tenants in common unnecessarily caused this litigation. Gary asserts that no reasonable person would have awarded Brian the costs accrued by his decision to pursue his individual goals, and that the district court should not have ordered Gary to reimburse the trust unless it was to punish egregious conduct, such as bad faith or fraud—conduct not shown here.

17

In trust adjudication, a district court may award attorney fees to any party. "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004. The district court has wide discretion to determine the amount and recipient of attorney fees. *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 203, 235 P.3d 515 (2010). "In the context of the abuse of discretion challenge mounted here, we assess whether no reasonable person would adopt the position taken by the district court." *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015) (citing *In re Estate of Somers*, 277 Kan. 761, 773, 89 P.3d 898 [(2004)]). An award of attorney fees will be found reasonable if the litigation proved beneficial to the trust estate. See *Moore v. Adkins*, 2 Kan. App. 2d 139, 151, 576 P.2d 245 (1978). And legal proceedings benefit a trust estate if questions are resolved so the estate can be properly administered. *In re Trusteeship of the Will of Daniels*, 247 Kan. 349, 357, 799 P.2d 479 (1990). That is a pretty broad standard.

Gary challenges both the amount awarded and the order that he reimburse the trust for the fees caused by litigation over the Lake Properties. But he does not challenge the legal services provided or the reasonableness of the legal services itemized or the fees charged. Because our law gives the district court discretion to award costs and expenses and to charge them against "another party or from the trust that is the subject of the controversy," Gary must show the district court abused its discretion in both regards. K.S.A. 58a-1004; see *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017) (party asserting abuse of discretion bears burden of proof). Gary fails to meet that burden.

True, Brian's distribution proposal, while consistent with the trust terms and arguably fair, went against Gary's preference to own or share ownership of the Lake Properties. Only because Brian was trustee could he prevail over his brother's contrary desires about ownership of the Lake Properties. But Brian distributed the Lake Properties

18

as authorized by the trust terms and within his duties as trustee. And because the brothers disagreed on how to handle the Lake Properties and could not resolve their differences short of litigation, litigation was necessary to proper administration of the estate.

We recognize that, as experts on the reasonableness of attorney fees, we could disagree with the district court's assessment of fees and fix a different award:

> "While great deference is given a trial court in these matters, this court has stated that 'appellate courts, as well as trial courts, are experts as to the reasonableness of attorneys' fees and may, in the interest of justice, fix counsel fees when in disagreement with views of the trial judge.' [Citations omitted.]" *Somers*, 277 Kan. at 773.

But Gary does not challenge the reasonableness of the legal services or the fees charged.

Although we may not have assessed all the Lake Properties litigation fees against Gary, we decline to alter the district court's award. The district court considered the facts and the necessary factors for deciding attorney fees. See Kansas Rule of Professional Conduct 1.5 (2022 Kan. S. Ct. R. at 333). And this court generally affirms decisions made within the district court's discretion even when reasonable minds could differ, as here. The applicable standard requires a showing that "no reasonable person would reach the district court's decision" about attorney fees. *Consolver v. Hotze*, 306 Kan. 561, 571, 395 P.3d 405 (2017). Gary fails to make that showing. Because Gary started the Lake Properties litigation and lost on all his claims, we cannot say that no reasonable person would have ruled as the district court did.

DID THE DISTRICT COURT IMPROPERLY AWARD FUTURE ATTORNEY FEES?

Lastly, Gary claims the district court erroneously imposed future attorney fees. Gary relies on this language:

19

"In addition, should the Court approve any further fees of the [trustee's] Firm for services [that] were incurred that relate to this judicial proceeding, Gary Culliss will be ordered to pay some or all of those fees within thirty days of the entry of that Order."

We do not view this language as a premature award of attorney fees for services to be performed in the future. Rather, by this language the district court simply expressed its intent to apply the same reasoning and result in the event the court approved more trustee's fees for services the trustee's firm had incurred by defending the lawsuit Gary filed on May 17, 2019. Thus, when Brian moved to alter and amend the fee order, the district court applied this rationale, approving additional fees of the trustee's firm for such services, and ordering Gary to pay them.

### IS BRIAN ENTITLED TO ATTORNEY FEES ON APPEAL?

In his brief, Brian requests his attorney fees on appeal. But Brian filed no motion or affidavit requesting such fees, as is required. See Kansas Supreme Court Rule 7.07 (2022 Kan. S. Ct. R. at 51). We thus deny this request for lack of compliance with our rules. See *In re Estate of Mouchague*, 56 Kan. App. 2d 983, 994, 442 P.3d 125 (2019) (denying motion for attorney fees based on failure to comply with motion and affidavit requirements in Rule 7.07 and KRPC 1.5.

Affirmed.