NOT DESIGNATED FOR PUBLICATION

No. 125,952

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JANETTE MARIE MILLER,
*Appellee/Cross-appellee*,
and MARK BENTON MILLER and JUSTIN MILLER,
*Appellees/Cross-appellants*,

v.

LAWRENCE BRADLEY MILLER and AMY STARR MILLER,
*Appellants/Cross-appellees*,

and

CALEB BOONE,
*Intervenor/Cross-appellant.*

MEMORANDUM OPINION

Appeal from Rooks District Court; THOMAS J. DREES, judge. Submitted without oral argument. Opinion filed October 18, 2024. Affirmed.

*Todd D. Powell*, of Glassman Bird Powell LLP, of Hays, for appellants/cross-appellees Lawrence Bradley Miller and Amy Starr Miller.

*Janette Miller*, appellee/cross-appellee, pro se.

*Chris McGowne*, of McGowne Law Offices, P.A., of Hays, for appellee/cross-appellant Mark Benton Miller.

*Craig L. Uhrich*, of Upshaw, Uhrich, Taylor & Dykema, PLLC, of Oakley, for appellee/cross-appellant Justin Miller.

*Caleb Boone*, intervenor/cross-appellant, pro se.

1

Before MALONE, P.J., GREEN and SCHROEDER, JJ.

MALONE, J.: This case involves an acrimonious and long-running quarrel between five siblings over the administration of the estate of their mother, Sonya Miller. The five children are Lawrence Bradley Miller (Brad), Denise Ann Roenne, Janette Marie Miller, Mark Benton Miller, and Justin Miller. This is the second appeal to this court, following *Roenne v. Miller*, 58 Kan. App. 2d 836, 475 P.3d 708 (2020), *rev. denied* 312 Kan. 893 (2021). In the prior appeal, we found Brad breached his fiduciary duties to his siblings as the trustee of a testamentary trust created by Sonya's will. We remanded the case for the district court to craft the appropriate remedies for the breach of trust and to consider any defenses raised by Brad and his wife, Amy Starr Miller. *Roenne*, 58 Kan. App. 2d at 851.

Following proceedings on remand, the district court rejected Brad and Amy's defenses including statute of limitations and laches, ordered Brad and Amy to return mineral interests to the trust and to reimburse the trust in the amount of $1,714,300 in damages, removed Brad as trustee and appointed Southwind Bank as successor trustee, and ordered Brad and Amy to pay attorney fees in the amount of $323,338.16.

Brad and Amy now appeal the district court's orders on damages, their various defenses, and its award of attorney fees. More specifically, they allege:
(1) The district court erred in rejecting their statute of limitations defense and in ordering damages dating back before the statute of limitations period began to run;
(2) the district court erred in rejecting their laches-based defense;
(3) the district court abused its discretion in calculating the amount of damages;
(4) the district court erred in ordering equal distributions of the trust income to each of the beneficiaries in its damage award;
(5) the district court erred in removing Brad as trustee;
(6) the district court erred by ordering postjudgment interest to begin to run before its judgment was final; and

(7) the district court abused its discretion in awarding attorney fees and in calculating the amount of the award.

The other siblings oppose Brad and Amy's claims and have separately filed cross-appeals in which they contend:

(1) The district court erred in failing to award them double damages under K.S.A. 58a-1002 and declining to order punitive damages;

(2) the district court erred in awarding a portion of the attorney fee award to Caleb Boone, who withdrew from representing them following the suspension of his license;

(3) the district court erred in waiving the requirement that Brad and Amy post a supersedeas bond; and

(4) the district court abused its discretion in ordering that its award of attorney fees prevented their attorneys from seeking additional reimbursement under their engagement contracts.

Finally, Caleb Boone—who previously represented the plaintiffs/cross-appellants in this case, was awarded attorney fees by the district court, and was permitted intervenor status in the case *solely to advocate for his attorney fees*—filed a brief in which he raised other issues, including:

(1) Whether the district court lacked jurisdiction because it failed to join 19 allegedly indispensable parties;

(2) whether the district court erred in denying his motion for summary judgment in which he asserted a contract-based claim for 40% of the plaintiffs' damage award;

(3) whether the court should have awarded prejudgment interest; and

(4) whether this court should dissolve a protective order sealing certain financial documents so that he could fully brief certain issues on appeal.

We have thoroughly reviewed the extensive record on appeal and the arguments made by the parties in their briefs. For the reasons explained below, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Sonya died in 1995. She was survived by five children: Brad, Denise, Janette, Mark, and Justin. At the time of her death, Sonya owned royalty interests in several oil leases in Rooks County; farmland in Osborne County and Russell County; a house in Natoma, Kansas; cattle; farm equipment; and other personal property. In her will, Sonya left her farm real estate to Brad and Mark—the will explicitly excluded her other children from ever having any interest in the farm property. Sonya also left her livestock, some farm machinery, and personal property to Brad and Mark. She left the remainder of her estate, which consisted solely of the oil royalty interests, to a trust to be managed "'for the benefit of all of her children.'" 58 Kan. App. 2d at 849. Sonya named Brad as trustee and named Mark to replace Brad in the event of his death, incapacity, or disqualification. Brad was appointed and swore an oath to become the trustee.

In what would become the focus of the *Roenne* panel's analysis, the testamentary trust provided its trustee with "'uncontrolled'" and "'exclusive' discretion" over the trust and authorized the trustee's use of the income and principle of the trust for many activities. 58 Kan. App. 2d at 839-40. For reference, the trust stated, in part:

> "'The net income may be paid to, or applied for the benefit of, any or all of the beneficiaries from time to time, in such amount or amounts as the said trustee, in his uncontrolled discretion may determine; any net income in any year which is not paid to, or applied for the benefit of, any of said beneficiaries, shall be added to the principal at the end of the year; and in addition, the principal may be paid to, or applied for the benefit of, any of the said beneficiaries, from time to time, in such amount or amounts as the said trustee in his uncontrolled discretion may determine.

4

. . . .

"'The said trustee, in his uncontrolled discretion, may at any time he deems it advisable and for the best interests of the said beneficiaries, distribute such income and principal to any of the beneficiaries designated herein at any time and in any amount. I want it made clear however that it is strictly within the discretion of the said trustee as to what income is paid to each of the beneficiaries entitled thereto as well as what principal may be provided to any of the beneficiaries entitled thereto.

. . . .

"'. . . At all times, the entitlement of the beneficiaries to the income or principal shall be in the sole and exclusive discretion of the trustee named herein and his successors and at all times, his decision concerning distribution shall be final both as to the amount to be received by each of the said beneficiaries, as well as which beneficiary shall receive. At no time shall any of the beneficiaries named have the absolute right or entitlement to any of the income or principal or either of them, except for the right of the grandchildren of the said decedent for distribution upon liquidation of the said trust.'" 58 Kan. App. 2d at 839.

While Sonya granted the trustee unlimited authority to decide what to do with the trust's assets, the trust specified that the trustee was to *only* act in a fiduciary capacity:

"'All powers given to the trustee or trustees by this instrument are exercisable by the trustees only in a fiduciary capacity. No power given to the trustee or trustees hereunder shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of the principal of the income therefrom for less than adequate consideration in money or money's worth.'" 58 Kan. App. 2d at 840.

The trust also required that the trustee "'shall each year render an account of his administration of the trust funds hereunder that the same shall be available for inspection by any of the beneficiaries at any reasonable time.'" 58 Kan. App. 2d at 840. Finally, the trust provided:  "'Each trustee and each successor trustee shall be liable only for failure to exercise reasonable care, prudence and due diligence in the discharge of his duties hereunder, but not for errors of judgment made in good faith.'" 58 Kan. App. 2d at 840.

Turning to the events giving rise to this lawsuit, starting from the time Brad was made trustee, he began to display "a clear pattern of conduct" and "treated [the] trust as his own property with no regard or consideration to the other beneficiaries." 58 Kan. App. 2d at 840. As the *Roenne* panel summarized:

"As trustee, Brad distributed the income generated from the trust's oil leases to himself personally from 1996 through 2015. He never set up a bank account for the trust. Instead, Brad deposited the oil income directly into his personal checking account which he jointly owned with Amy. Brad testified the gross production of the oil leases during the life of the trust was about $1,300,000.

"Brad testified that he used the oil income to pay down the large debts on Sonya's farm real estate, which was not part of the trust. He acknowledged that this land was personally owned by him and Amy and he had used the oil income to pay for farm expenses in general, and not just debt. Amy acknowledged the oil income benefited her because it was being used to reduce the debt on the land in her name.

"Part of Brad and Amy's farming operation consisted of two sections of Russell County land and Osborne County land from Sonya's estate. Brad admitted that his use of the oil money did not benefit the trust. But unless he could use the oil income to service the debt on the farm real estate and pay the farm expenses, he would not have taken on the responsibility of executor and trustee. He testified that he promised his mother that he 'would keep the farm intact whatever way I could.' He believed the trust gave him the authority to distribute all the wealth and worth of the trust to himself only and to pay the other beneficiaries nothing. He testified he was 'investing' the oil money in his land.

"In 2013 and 2014, as trustee, Brad conveyed the mineral rights from the trust to himself personally as a beneficiary, effectively emptying the trust of assets." 58 Kan. App. 2d at 841.

In December 2015, Brad's siblings, the other beneficiaries of Sonya's trust, filed suit against Brad alleging he negligently and fraudulently breached his fiduciary duties by converting the income from the trust for his own use, by converting the entirety of the mineral interests to himself, and by failing to provide any accounting for the trust activity. After a three-day trial in March 2018, the district court—in "a clear win" and

6

"total victory" for Brad and Amy—found that no fiduciary violations had occurred because Sonya had intended to give Brad, as the trustee, *complete control* of how to utilize the trust and its assets. 58 Kan. App. 2d at 842-43. Brad's siblings appealed, arguing that regardless of the trust's grant of unfettered discretion to the trustee, Brad was still required to abide by the fiduciary duties required of any trustee.

On appeal, this court reversed the district court, holding that the trust's broad grant of authority did "not relieve [Brad] from his fiduciary duties as a trustee to act impartially in the interests of all the beneficiaries, rather than just himself." 58 Kan. App. 2d at 850. The panel concluded that Brad had violated the fiduciary duties of loyalty, impartiality, and prudence when he cleaned out the trust assets for his own use, acting as if the trust property was an outright gift to himself. 58 Kan. App. 2d at 848. The panel explained:

> "While the trust instrument contemplates that Brad could buy Sonya's farm, use the trust income and principal to pay farming expenses, and convey or purchase mineral rights, such actions would be done in his role as a fiduciary, not as a beneficiary. Nowhere does the trust suggest that Sonya intended for Brad to empty the trust and transfer all its assets into his personal account as a beneficiary to operate his own personal farming operation. Brad cannot reasonably rely on any express provision of the trust to override his duties of loyalty and impartiality.
>
> "Brad testified repeatedly that he was relying on a promise he made to Sonya, which was not part of the trust instrument. Brad testified he was making an 'investment' in the farm. But what is important here is not Brad's promise—but Sonya's intent when she created this trust for the benefit of all of her children. If she wanted Brad to have all of the royalty interests and the income from them, she could have given them to him as she did with the farm in her will. And there is no express language allowing Brad, as trustee, to set everything over to himself and his wife.
>
> "By conveying all of the income and royalty interests to himself, the trust essentially disappeared, and the 'investment' benefited Brad alone rather than the other beneficiaries. And Brad informed none of the other beneficiaries that he intended to empty the trust. It does not appear he gave any thought to the other beneficiaries at all.

"The district court erred by focusing only on the uncontrolled discretion language in the trust, without inquiry into whether Brad acted in good faith in the interests of the beneficiaries. The court held that the trust instrument imposed 'no limitations' on the trustee's powers. Even though the trust language gave Brad 'uncontrolled discretion,' it did not relieve him from his fiduciary duties as a trustee to act impartially in the interests of all the beneficiaries, rather than just himself. His fiduciary duties of loyalty and impartiality were limitations on his powers as trustee.

"This narrow focus by the court ignored Sonya's clear intent to create this trust for the benefit of all of her children—not just Brad. The court's limited view essentially erased the other beneficiaries from the trust, which was not Sonya's intent because she named them as beneficiaries. Language giving a trustee uncontrolled discretion does not mean the trustee can disregard the other beneficiaries' interests to the trust. That is the bad precedent created by the court in its ruling here. A trustee, even one with great authority and discretion to act as Brad did here, has the duty to act as a fiduciary to all the beneficiaries." 58 Kan. App. 2d at 849-50.

The *Roenne* panel remanded the case for the district court to craft the appropriate remedies for the breach of trust and to consider the statute of limitations and equitable defenses raised by Brad and Amy. 58 Kan. App. 2d at 851. Brad and Amy petitioned for review, which our Supreme Court denied on February 2, 2021. See 312 Kan. at 893.

*Proceedings on remand*

On remand, the district court ordered the parties to draft briefs on the issues of damages and defenses. In their briefs, Mark, Justin, and Janette requested Brad's removal as trustee and the appointment of a neutral third party, the return of the mineral rights Brad had transferred, and compensatory damages, including the oil royalties distributed since 1995 and an application of the double damage rule under K.S.A. 58a-1002(a)(3), and a punitive damage award—the total amount they requested was $7.9 million. They also asked the district court to award attorney fees.

Brad and Amy argued that the district court should decline the plaintiffs' request to account for all of the trust income dating to 1995, asserting that despite the *Roenne* panel's decision on his breach of his fiduciary duties, Brad was entitled to make whatever distributions of the trust's assets he desired. They argued that the district court would have to ignore, or rewrite, the language of the trust to "satisfy the agendas of the Plaintiffs" and instead should simply order the return of the mineral interests to the trust—the event they alleged had started the statute of limitations period. As part of their statute of limitations argument, Brad and Amy argued that the plaintiffs' damage award could not go back further than the date of their mineral transfer because, considering the unlimited discretion Brad was given as trustee to distribute the oil royalties, "there could have been no action brought under the terms of the trust before that time."

Throughout their brief Brad and Amy contended that the transfer of the trust assets, not the hoarding of oil royalties, was the only actionable breach of trust. They also argued for the application of two other equitable defenses: laches and waiver. Brad and Amy opposed the plaintiffs' request for both double damages and punitive damages, arguing that "[t]rust property [could] be restored, and the integrity of the trust protected going forward, without penalizing [them] for adherence to language in the trust." Finally, Brad argued that he should be permitted to remain the trustee and that any award of attorney fees should be ordered to be paid from the trust.

On October 8, 2021, the district court held a hearing on the various pleadings. After the hearing, Brad and Amy requested, and were granted permission, to file a narrative statement under seal detailing their assets, debts, and equity, the oil revenues they received during the life of the trust, and how they used those oil revenues.

On May 23, 2022, the district court entered its order. The district court began by addressing, and rejecting, Brad and Amy's statute of limitations, laches, and waiver defenses. As to the statute of limitations-based defense, the district court found that

9

K.S.A. 58a-1005(c) provided the applicable statute of limitations. The district court explained that although Brad had been giving himself all royalties and income from the trust for many years, the limitations period began to run when Brad terminated the beneficiaries' interest by transferring the trust assets to himself; as such, the district court found that the plaintiffs had filed their suit within the two-year limitations period. Turning to the waiver and laches defenses, the district court succinctly stated that neither defense applied "to a trustee who has violated his fiduciary duties to the beneficiaries."

After rejecting Brad and Amy's defenses, the district court outlined its ruling on the issue of a proper remedy. The district court first voided the transfer of the mineral interests under its authority to void an act of the trustee and recover property wrongfully disposed of under K.S.A. 58a-1001(a), ordering Brad and Amy to "[r]eturn the oil interests of the trust to the trust." Next, the district court ordered Brad's removal as the trustee, citing his blatant disregard for the other beneficiaries' interests and the animosity between the siblings. The district court noted that it would appoint a neutral, third-party trustee.

The district court next ordered: "Brad and Amy Miller are to return 80% the royalties that were removed from the trust without consideration of the other beneficiaries [from 1995 to 2021]." The district court calculated the total amount of this payment, $1,714,300, from an accounting of oil royalties that Brad and Amy provided. The district court ordered that the payment be distributed equally among the siblings, and that "[a]ll future royalty earnings of the trust shall be divided evenly among the siblings, 20% each, until all siblings have passed (died). Then the remainder of the trust shall pass on to the grandchildren of Sonya Miller, per capita, as directed by the trust."

The district court then ordered that, based on the breach of fiduciary duties, Brad and Amy would be required to personally pay for the plaintiffs' reasonable attorney fees and expenses. The district court reserved the issue of the amount of the award for a later

10

hearing, noting that it "need[ed] additional information from all of the parties to determine what reasonable attorney fees are in this case."

Finally, the district court denied the plaintiffs' requests to order double damages and to make an award of punitive damages. It explained:

"Trust law is equity in nature. In this particular case, because of the language in the trust, this Court finds it would be inequitable to impose the double damage punitive provision of K.S.A. 58a-l002(a)(3) because the trust purported to give Brad Miller the authority he used. Second, this Court finds under the equity principle, that Brad was a beneficiary along with his siblings, and the statute talks of embezzling and converting trust assets to trustee's personal use, which this Court finds would not apply to a beneficiary acting in accordance with the language of the trust. Therefore, in equity, this Court does not award the penal or punitive damages under K.S.A. 58a-1002(a)(3) or (c)."

After the district court's order, Southwind Bank was appointed as the successor trustee. After being appointed, Southwind Bank moved to intervene in order to file a motion to alter or amend the district court's order on damages. In its motion to alter or amend, Southwind argued the district court's order—specifically the portion "directing equal distribution of the oil royalties in suspense and any future royalties"—was contrary to the terms of the trust and constituted a modification of its terms. The district court held a hearing on the matter on December 21, 2022. The next day, the district court granted Southwind's motion to intervene, finding the bank was an interested party with standing, but it denied Southwind's motion to alter or amend the order on damages.

As noted above, in its order on the issues of damages and Brad and Amy's defenses, the district court requested the parties provide letters explaining their positions on the reasonable amount of attorney fees. The district court also permitted Boone to intervene in the case solely to advocate for his attorney fees.

11

The district court held a hearing on the issue of reasonable award of attorney fees on August 31, 2022. Two months later, the district court ruled on the matter. The district court found that an award of hourly fees was more appropriate than the contingency fee of 40% that had been outlined in the plaintiffs' engagement letter—the district court noted that trust litigation is rarely handled on a contingency basis. The district court ordered Brad and Amy to pay: $9,225 in fees and expenses to Mark's attorney, Ross Wichman; $100,654 in fees and expenses to Boone for his 315 hours of work, at a rate of $300 per hour; and $213,459.16 in fees and expenses to Craig Ulrich—who began representing the plaintiffs after Boone was disbarred and successfully appealed the court's initial ruling—for his 465 hours of work, at a rate of $450 per hour.

The district court ordered Brad and Amy to "pay a total of $323,338.16 to Plaintiffs for their attorneys' fees and expenses incurred through August 31, 2022," a sum which it found represented a reasonable attorney fee and was fair, just, and equitable. The district court ordered that this award was "in lieu of any amount that Plaintiffs' attorneys may have sought to receive under their engagement contracts."

Finally, regarding an appeal bond, the district court ruled that if the Brad and Amy "return[ed] the mineral rights to the Trust and all suspended royalties to the Trust without waiting for any appeal of this Order, then such will serve as the supersedeas bond with no further appeal bond being required if this Order is appealed." Brad and Amy timely appealed the district court's orders on damages, their defenses, and its award of attorney fees. The other siblings cross-appealed. Justin, Mark, and Janette filed briefs, but Denise filed no brief on appeal. Boone also filed a notice of cross-appeal.

12

DID THE DISTRICT COURT ERR IN REJECTING
BRAD AND AMY'S STATUTE OF LIMITATIONS DEFENSE?

Brad and Amy contend the district court erred in rejecting their statute of limitations defense and in ordering damages for the time before the statute of limitations began to run, which they allege was before the plaintiffs' cause of action accrued. More specifically, Brad and Amy argue that the plaintiffs' only actionable claim against them related to the transfer of the mineral interests—not the decades long payment of oil royalty income exclusively to themselves. Justin and Mark contend that the district court did not err in rejecting Brad and Amy's statute of limitations defense. They also assert that Brad and Amy are raising the damage accrual issue for the first time on appeal and are trying to change the nature of their statute of limitations defense.

We will address the preservation issue first. Although Brad and Amy did not provide a record citation to where they raised the damage accrual issue in district court in their opening brief, their reply brief notes that they made the argument in their briefing to the district court regarding the issue of damages on remand. They are correct. In their brief to the district court, Brad argued that "the only survivable claim here relates to Brad's actions in transferring the mineral interests. Defendants do not believe that Plaintiffs can go any further back than December 9, 2013, to claim damages." They also asserted: "Since no beneficiary is entitled to any distribution under the Trust, no cause of action arose until the mineral interests were transferred, and again, those transfers were the reason for the lawsuit and the apparent basis of the Court of Appeal's decision." They argued that Brad's siblings tried to take advantage of the statute of repose, K.S.A. 60-513(b), to "enlarge their claim." Because Brad and Amy raised the damage accrual issue to the district court, we find the issue is properly preserved for appeal.

"A statute of limitations creates a procedural barrier to bringing an action after a stated number of years. Once the time period in a statute of limitations has expired, the

claim still exists but the plaintiff is barred from obtaining any relief on it." *Dunn v. Dunn*, 47 Kan. App. 2d 619, 628, 281 P.3d 540 (2012). The interpretation and application of a statute of limitations is a question of law over which an appellate court exercises unlimited review. *Garcia v. Bell*, 303 Kan. 560, 571, 363 P.3d 399 (2015).

The Kansas Uniform Trust Code (KUTC) has a statute of limitations that is codified in K.S.A. 58a-1005. Under K.S.A. 58a-1005(a), the limitations period begins when a potential claim is "adequately disclosed" in a trust report. Here, subsection (a) does not apply because Brad never created or filed any trust reports and gave no notice to his siblings of the distributions during his time as trustee. K.S.A. 58a-1005(c), provides that if subsection (a) does not apply:

> "a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within two years after the first to occur of:
>> "(1) The removal, resignation, or death of the trustee;
>> "(2) the termination of the beneficiary's interest in the trust; or
>> "(3) the termination of the trust."

The district court found that the subsection (c)(2) applied, noting that the beneficiaries' interest in the trust was terminated when Brad removed the remaining assets of the trust by transferring them to himself and Amy. The court explained:

> "The beneficiaries' interest in the trust was terminated when Brad Miller removed the assets of the trust, the Rooks County oil leases, which occurred on December 9, 2013, when the F. Walker B, Walker A & B, Walker-Miller and Hutton leases were deeded to himself (the deed recorded December 1, 2013). The remaining leases, Walker-Miller, and the Walker 1-B were transferred on January 20, 2014, (the deed recorded February 6, 2014). Brad Miller had long since removed any royalties and interest from the account, paying it directly to himself. What remained were the actual leases themselves. When Brad Miller transferred the mineral interest leases to himself, thereby removing all asset from the trust, Brad Miller effectively terminated the beneficiaries' interests in the trust

14

because there were no longer any assets. The last of which occurred on January 20, 2014, (recorded February 6, 2014). The Plaintiffs had two years from the January 20, 2014, to file, which they did. The original action was filed on December 8, 2015. Two days before the two-year anniversary of the first of the lease transfers, and six weeks shy of the two-year anniversary of the remaining leases being transferred. Therefore, the statute of limitations does not bar this action."

In sum, the district court found that the statute of limitations began to run when Brad transferred the mineral interests to himself, effectively terminating his siblings' interest in the trust. The last of the lease transfers occurred on January 20, 2014. The district court found that the plaintiffs had two years from January 20, 2014, to file their lawsuit, which they did. We agree with the district court. While Brad's breach of trust may have begun when he began to syphon trust income to himself and Amy in 1995, the only event triggering the statute of limitations under the applicable statute occurred years later when he transferred the entire trust assets to himself. We find that the district court correctly rejected Brad and Amy's statute of limitations defense in ruling that the plaintiffs filed their case within the K.S.A. 58a-1005(c)(2) limitations period.

Although framed as a statute of limitations argument, Brad and Amy do not appear to contest the district court's finding that the lawsuit was filed within the applicable statute of limitations. The crux of their argument on appeal is that the district court improperly awarded damages for the time before Brad transferred the trust's mineral interests to himself. Brad and Amy claim that all of the damages related to oil royalty payments occurred before any sustainable cause of action had accrued. They assert that the "only actionable claim in this matter was the mineral interest transfers."

Brad and Amy base their argument on two dubious assumptions: First, that the broad language of the trust, which eliminated any entitlement to distributions for the beneficiaries, permitted Brad to disgorge all of the oil royalties to himself without regard for the other beneficiaries. Second, Brad and Amy assert that the *Roenne* court held that

15

the only breach of Brad's fiduciary duties occurred when he transferred the mineral interests to himself and Amy, not that he breached those duties by distributing the oil royalties exclusively to himself for over two decades without regard for his siblings. This is not an accurate reading of the *Roenne* court's opinion.

The *Roenne* court explained that Sonya created a discretionary trust and that "Brad had great freedom to act in his capacity as trustee." 58 Kan. App. 2d at 844-45. But the *Roenne* court rejected a nearly identical argument raised by Brad that he had total discretion and could not be liable to the other beneficiaries for any breach of trust:

> "Under this view, if the settlor's wishes direct that the trustee is to have total discretion, the courts will not thwart that intention by second-guessing the trustee's actions. Brad and Amy rely on this shield as their defense. According to Brad, Sonya granted him total discretion, and he chose to exercise his discretion as: 'I will take it all for myself.' The district court embraced this same view and ruled Brad's actions were proper.
> "The trouble with this 'take the money and run' ruling is that it ignores some key principles of the law of trusts. These principles apply to all trusts. They are called the fiduciary duties of trustees: loyalty, impartiality, and prudence." 58 Kan. App. 2d at 845.

And the *Roenne* court found: "By conveying all of the *income* and *royalty interests* to himself, the trust essentially disappeared, and the 'investment' benefited Brad alone rather than the other beneficiaries." (Emphases added.) 58 Kan. App. 2d at 849.

While much of the *Roenne* court's discussion relates to Brad's transfer of the mineral interests, the court included his decades long pattern of distributing the income of the trust to himself as part of his breach of fiduciary duties. As the court noted: "The record on appeal discloses a clear *pattern* of conduct by Brad. He treated this trust as his own property with no regard or consideration to the other beneficiaries." (Emphasis added.) 58 Kan. App. 2d at 840. This pattern of conduct included his distribution of "the

16

income generated from the trust's oil leases to himself personally from 1996 through 2015." 58 Kan. App. 2d at 841. In short, Brad's argument that the only breach of fiduciary duties that the *Roenne* court found was his final transfer of the mineral interests is untenable. Rather, the court found that Brad had engaged in a pattern of using the trust income for his own purposes from the time he swore an oath to become the trustee.

Finally, Brad argues the beneficiaries could not have sustained a legal action regarding his decision to make distributions solely to himself dating to 1995, but this contention ignores the fact that Sonya created her trust for the benefit of all of her children, and as trustee Brad's discretionary authority was limited by his duties of loyalty and impartiality. Because the trust was discretionary, the beneficiaries could not have compelled Brad to make distributions. But a court may interfere in cases of an abuse of discretion by a trustee, where the trustee acted in bad faith or the trustee's "conduct is so arbitrary and unreasonable as to amount to practically the same thing." *Jennings v. Murdock*, 220 Kan. 182, Syl. ¶ 1, 553 P.2d 846 (1976). As noted above, Brad was not entitled to rely on the trust provisions to excuse his actions which breached his fiduciary duties to the other beneficiaries. The result Brad requests—that this court set aside the damages award relating to his unilateral distribution of the trust income for his own benefit for over two decades—would require this court to ignore the fiduciary duties of loyalty, impartiality, and prudence, key principles of the law of trusts.

In sum, the district court did not err in finding that the plaintiffs' lawsuit was not barred by the applicable statute of limitations. We also find that the district court did not err in awarding the beneficiaries damages relating to Brad's distribution of royalty income to himself from the start of the trust in 1995.

17

## DID THE DISTRICT COURT ERR IN REJECTING BRAD AND AMY'S LACHES DEFENSE?

Next, Brad and Amy argue that the district court erred in rejecting their defense to the lawsuit under the equitable doctrine of laches. They assert that Brad's siblings failed to sufficiently investigate their claims and bring their lawsuit for an unreasonable amount of time. Justin and Mark respond that the district court appropriately denied Brad and Amy's laches defense under the unclean hands doctrine. They also contend that Brad and Amy were not entitled to the defense of laches because they failed to show that they were prejudiced by any delay in the lawsuit being filed.

"The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 388-89, 22 P.3d 124 (2001). The doctrine works as an equitable bar against stale claims when a party neglects to assert a right for an unreasonable and unexplained length of time, and that delay causes prejudice to the adverse party. *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 725, 840 P.2d 1107 (1992).

An appellate court reviews a district court's decision on the application of the doctrine of laches for an abuse of discretion. *Meneley*, 271 Kan. at 388. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). As the party alleging an abuse of discretion, Brad and Amy bear the burden to establish it. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Before the district court, Brad and Amy asserted the doctrine of laches as a defense, contending the other beneficiaries did not pursue any claims, or even request an accounting of the trust, until they had transferred the trust's assets to themselves—that is, they argued that Brad's siblings had slumbered on their rights for an unreasonable and

18

unexplained amount of time. In its order, the district court rejected the laches defense, explaining that "the equitable doctrine of latches [*sic*] and waiver do not apply to a trustee who has violated his fiduciary duties to the beneficiaries." The district court did not elaborate on the rationale for its ruling.

Although the district court did not use the term, both Justin and Mark maintain that the court appropriately found that the equitable defense of laches was inapplicable under the clean hands doctrine. At its core, the clean hands doctrine provides that a litigant "who comes into equity must come with clean hands. The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct." *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975). There is no precise formulation as to what extent of conduct may amount to unclean hands other than willful conduct with an immediate relation to the subject-matter of the suit, which the court regards as inequitable. 217 Kan. at 220-21. And, like the doctrine of laches, the application of the clean-hands doctrine is left to the discretion of the district court. 217 Kan. at 220-21.

The order on damages and Brad and Amy's defenses leaves little doubt that the district court found that Brad acted inequitably in his administration of the trust:

> "The Court of Appeals noted and the Record on Appeal discloses a clear pattern of conduct by Brad Miller. He treated the trust as his own property with no regard or consideration for the other beneficiaries, his siblings. . . . By conveying all of the income and royalty interest to himself, the trust essentially disappeared, and Brad did not give any thought or consideration to the other beneficiaries at all."

While not explicit in the order, it appears that the district court found that Brad's blatant disregard for his siblings' interests and his decades long use of the trust assets solely for himself was not only a breach of his fiduciary duties but also rendered his hands unclean. Brad and Amy cannot show that the district court's decision not to apply

19

the equitable defense of laches due to their inequitable conduct was an abuse of discretion. On appeal, they fall back on the argument they raised before the district court that the trust permitted Brad's conduct and his disregard for the other beneficiaries' interests. While the district court did not mention the clean hands doctrine, its explanation of its ruling—that Brad and Amy were not entitled to an equitable defense because of their inequitable conduct—accords with the principles of the doctrine. The district court's decision is not unreasonable, nor is it based on an error of law or fact.

Beyond the fact that the district court did not abuse its discretion in refusing to provide equitable relief due to Brad's inequitable conduct, Brad and Amy did not establish that they were prejudiced by the other beneficiaries' actions—a necessary element for the application of the defense of laches. The Kansas Supreme Court has explained that "the mere passage of time is not enough to allow a party to invoke the doctrine. For laches to apply, the court must consider the circumstances surrounding the delay and whether there was any disadvantage to the other party caused by that delay." *Steele*, 251 Kan. at 725; see *Meneley*, 271 Kan. at 389 ("In order to invoke the doctrine of laches, the moving party must show that it has been prejudiced or put at disadvantage by the delay."). Here, Brad and Amy have provided no evidence to support that they were prejudiced in any way by the other beneficiaries filing suit when they did. They simply assert that "prejudice is inherent in having to account for actions taken over a course of twenty five years." Without more, their laches argument cannot be sustained.

Finally, and perhaps most importantly, the defense of laches cannot be used to bar claims incurred within a limitations period set by statute. See *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328, 339-40, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017); *Wehrman v. Conklin*, 155 U.S. 314, 326, 15 S. Ct. 129, 39 L. Ed. 167 (1894) ("Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed."); *In re Marriage of Doud and Modrcin*,

59 Kan. App. 2d 244, 254, 480 P.3d 800 (2020). Although the district court did not make this point, it was nevertheless correct to deny Brad and Amy's laches defense because the plaintiffs filed their lawsuit within the limitations period. We conclude the district court did not abuse its discretion in declining to apply the doctrine of laches.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION IN ORDERING THAT BRAD AND AMY PAY $1,714,300 IN DAMAGES?

Brad and Amy assert that the district court's award of damages constituted an abuse of discretion because (1) the district court ignored, and then rewrote, the plain language of the trust, (2) its award was overly punitive, and (3) the district court disregarded their explanations about how they spent the trust proceeds. Mark and Justin argue that the district court did not abuse its discretion in crafting a remedy, but they argue that the district court should have awarded them a larger award, including double damages and punitive damages, as discussed more fully later in this opinion.

Under K.S.A. 58a-1001(b), a district court is granted authority to craft a remedy for a trustee's breach of trust, and the statute provides a number of specific options including compelling the trustee to pay money, voiding an act of the trustee, recovering trust property wrongfully disposed of or distributed, and removing the trustee. Because the statute vests the court with discretion in crafting the appropriate remedy, the parties all agree that we should review the district court's decision for an abuse of discretion. As we stated before, the party asserting the district court abused its discretion bears the burden of showing it. *Gannon*, 305 Kan. at 868.

In its remand order, the *Roenne* court specifically referenced both K.S.A. 58a-1001 and the Restatement (Third) of Trusts §§ 95, 100 (2012), as potential touchstones for crafting a remedy. 58 Kan. App. 2d at 850-51. As noted above, K.S.A. 58a-1001(b) presents a range of potential remedies including specific restitution or a money judgment,

21

while the Restatement (Third) of Trusts § 100 allows a court "to make the trust and its beneficiaries whole, usually by restoring the trust estate and trust distributions to what they would have been" if the trust had been properly administered.

After considering the parties' arguments on an appropriate remedy, the district court crafted a multifaceted order, requiring (1) Brad and Amy to return the oil interests they had transferred to themselves back to the trust; (2) Brad's removal as the trustee; (3) Brad and Amy to "return 80% the royalties that were removed from the trust without consideration of the other beneficiaries"—which it concluded amounted to $1,714,300; and (4) Brad and Amy to pay a reasonable award of attorney fees and expenses. As part of this order, the district court found that neither double damages, under K.S.A. 58a-1002(a)(3), nor punitive damages were warranted. The only portion of this award that Brad and Amy challenge under this issue is the district court's award of $1,714,300, which represents the share of the oil royalties that Brad gave to himself and Amy to the exclusion of the other beneficiaries—their challenges to the other portions of the district court's award are addressed in subsequent issues in this opinion.

In crafting the $1,714,300 award for trust income, the district court examined a schedule of oil royalties from the trust that Brad and Amy reported between 1995 and 2020. The district court found that the total amount of royalties that Brad paid himself for that period was $2,362,420. The district court noted that the royalties for the next year, 2021, were $14,000, and imputed that income to the total, and then reduced the amount by the taxes Brad and Amy paid during that time. After these calculations, the district court concluded that the net amount of oil royalties removed from the trust between 1995 and 2021 was $2,142,876. The district court explained that "equity demands the royalty be divided equally among all five beneficiaries." Thus, the district court found that each beneficiary, including Brad, was entitled to 20% of the net amount, and ordered that Brad and Amy repay 80% of the net amount to the other beneficiaries—a total of $1,714,300.

22

Brad and Amy do not challenge the specific method of calculation of the award amount; they argue that the district court's monetary award was contrary to the language of the trust because the beneficiaries were not entitled to any particular distributions and Brad had complete discretion to determine what he and his siblings received. Brad and Amy also contend that the $1,714,300 monetary award was unusually punitive, that it ignored their explanation of how they used the trust income, and that no reasonable person would agree with the monetary remedy.

Brad and Amy's argument that the district court's award was an abuse of discretion because the trust gave Brad unlimited discretion and provided that the other beneficiaries were not entitled to any trust proceeds ignores the district court and the *Roenne* court's rulings. Brad and Amy appear reluctant to admit that both courts found that Brad breached his fiduciary duties to the other beneficiaries by using the trust income solely for Brad's own purposes without regard for his siblings. But, as Mark points out, despite the trust language granting Brad uncontrolled discretion, the terms of the trust could not supersede the duties of a trustee to act in good faith and to administer the trust for the benefit of all the beneficiaries. See *Roenne*, 58 Kan. App. 2d at 846.

Moreover, as the *Roenne* court explained, if Sonya had intended to give Brad all the royalty income and interests, she could have given them to him as she did with the farm in her will. Instead, she directed that the trust was to be managed by Brad *for the benefit of all of her children*. Contrary to Brad and Amy's position that the district court's award of trust income distributions to each of the beneficiaries contravenes the trust's provisions, the order enforced Sonya's intent that the trust be administered for the interest of all of her children—it did not rewrite the language of the trust. Brad and Amy cannot show that it was an abuse of discretion for the district court to order them to repay 80% of the income they received and distribute it equally to the other beneficiaries.

23

Finally, Brad and Amy assert that the $1,714,300 award was unusually punitive and that the district court disregarded their testimony about how they had used the trust income—that is, they argue no reasonable person would agree with the court's award. They contend that the district court's decision to deny either double damages or punitive damages is incongruous with its decision that Brad must pay back 80% of the oil income he took for himself. It is not immediately apparent how the district court's decision to deny double damages and punitive damages affected its decision on the remaining monetary remedy. Brad's pattern of conduct—paying all of the oil royalty income to himself for over two decades—was in violation of his duties of loyalty, impartiality, and prudence. As will be explained in more detail later in this opinion, double damages are authorized if a trustee embezzles property for the trustee's own use, and punitive damages are permitted when a defendant deserves punishment for willful or wanton conduct.

The district court's award of a portion of the oil royalty payments merely constituted an equitable reimbursement of the money that Brad took for himself from the trust without regard to the other beneficiaries. The district court's order was appropriately aimed at making the trust, and its beneficiaries, whole. Brad and Amy cannot establish that no reasonable person would agree with the district court's decision to order them to repay $1,714,300 to the other beneficiaries of the trust.

### DID THE DISTRICT COURT ERR IN ORDERING EQUAL DISTRIBUTION OF FUTURE TRUST INCOME TO EACH OF THE BENEFICIARIES?

Brad and Amy next argue that the district court erred in ordering an equal distribution of the trust's future royalty earnings in its award of damages. They contend that the district court's order constituted an impermissible alteration to the trust's terms. Mark disagrees, arguing the district court could modify the terms of the trust to further its stated purpose because the trust language was unworkable. Justin also argues the district

court acted within its discretion, but he asserts that Brad's argument is unpreserved and should not be addressed by this court.

To begin with the preservation issue, in their reply brief, Brad and Amy maintain that their attorney joined the same argument when it was raised by Southwind Bank in its motion to alter or amend judgment after the district court's damage award. A review of the record confirms Brad and Amy's position. The district court rejected the argument in the damage award, explaining that "in remedying a—or crafting a remedy for 27 years of a trustee not considering the needs of all the siblings and everything that went into it, the only workable solution for the Court was to divide that recaptured money equally among the other four siblings." Because Brad and Amy objected to the district court's decision to order an equal distribution of the trust royalties as part of its damages award, the issue is preserved for this court's review.

The fundamental goal in interpreting a trust is the implementation of the grantors' intent. If the trust language is plain and unambiguous, then the grantors' intent can be determined from language used. But if the trust language is ambiguous, a construing court must place itself as nearly as possible in the position of the grantors and consider all of the language in the entire instrument to determine the intent. *Hemphill v. Shore*, 295 Kan. 1110, 1118, 289 P.3d 1173 (2012).

After ordering that the $1,714,300 in repaid trust income was to be evenly divided among the beneficiaries, the district court ordered:

> "This amount must be paid as soon as practical. All future royalty earnings of the trust
> shall be divided evenly among the siblings, 20% each, until all siblings have passed
> (died). Then the remainder of the trust shall pass on to the grandchildren of Sonya Miller,
> per capita, as directed by the trust. The remainder of the trust upon the death of the last
> child shall be distributed, per capita, to the then living grandchildren of Sonya Miller."

25

As noted above, in crafting this remedy, the district court emphasized that equity demanded that the trust income be divided equally among the five beneficiaries. Similar to their challenge to the amount of the monetary award, Brad and Amy contend that the district court's equal distribution of the oil royalties runs contrary to the language of the trust—specifically, those portions granting the trustee unlimited discretion to determine who received distributions and in what amount. They contend the court's decision amounts to an impermissible modification of the trust.

A district court has the authority to amend or modify a trust. K.S.A. 58a-412(a) provides that a court "may modify the administrative or dispositive terms of a trust . . . if, because of circumstances not anticipated by the settlor, modification . . . will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

Although the district court did not explain in its order that it found it necessary to modify the trust to create an appropriate remedy, it stated as much in denying Southwind Bank's motion to alter or amend its judgment. The district court explained: "And the Court did modify the trust, because it was an unworkable trust at that time to simply say, you know, let one—let the trustee benefit himself to the exclusion of the others." In response to Southwind's argument, the district court noted that removing the complete discretion that had been granted to the trustee to determine the amounts and recipients of distributions would make the trust easier to administer and reduce the potential for conflict that would arise from each beneficiary independently asking for payments.

The purpose of a court's authority to apply an equitable modification of a trust in the face of unanticipated circumstances "is not to disregard the settlor's intent but to modify inopportune details to effectuate better the settlor's broader purposes." K.S.A. 58a-412, UTC Comments. The district court's damages award made such a change. Sonya's trust was crafted as a discretionary trust, meaning the trustee, Brad, was given the

26

authority to make distributions from the trust at his discretion and the beneficiaries were not given any right to request any distribution at all. Sonya specifically gave the trustee "uncontrolled discretion" to administer the trust. And that broad grant of authority became the ultimate source of conflict in this case when Brad used that power to treat the trust as his own for over two decades. But Sonya's trust also explicitly stated that it was to be administered for the benefit of all the beneficiaries.

Here, the unanticipated circumstance instigating the district court's decision to modify the trust was Brad's pattern of administering the trust solely for his own use to the exclusion of all the other beneficiaries' interests. Because Brad's pattern of conduct ignoring his fiduciary duties, and the animosity between the siblings, evinced that the trust was not workable in the state it was drafted, the district court tried to modify the trust terms to address those issues. The district court had discretion to modify the trust, and the changes it made—i.e., to order the oil royalty income to be distributed evenly between the beneficiaries—were crafted to further Sonya's intent. While Brad and Amy may disagree with the outcome, it cannot be said that no reasonable person would agree with the district court's decision to remove conflict and order the oil royalties to be distributed equally between the siblings. We conclude the district court did not abuse its discretion when it ordered the trust's oil royalty income to be equally distributed.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN REMOVING BRAD AS TRUSTEE?

Brad and Amy contend the district court abused its discretion in removing Brad as the trustee. Mark and Justin maintain that the district court appropriately used its discretion to remove Brad as the trustee due to his long history of breaching his fiduciary duties and his acrimonious relationship with the other beneficiaries.

Kansas courts have consistently recognized that the decision to remove a trustee lies within the sound discretion of the district court. See, e.g., *Jennings*, 220 Kan. at 211.

27

We review the district court's findings of fact for substantial competent evidence. See *In re Hjersted Revocable Trust*, 35 Kan. App. 2d 799, 804, 135 P.3d 192 (2006).

"A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." K.S.A. 58a-1001(a). And if such a breach occurs, a court may remedy it by, among other things, removing the trustee as provided under K.S.A. 58a-706(b). K.S.A. 58a-1001(b)(7). K.S.A. 58a-706(b) provides that a "court may remove a trustee" under certain circumstances, including if the trustee has committed a breach of trust. That said, the removal of a trustee is a drastic action which should only be taken when intervention is necessary to save trust property. *Simpson v. State, Dept. of Soc. & Rehab. Services*, 21 Kan. App. 2d 680, 688, 906 P.2d 174 (1995). The district court's decision to remove a trustee is intended to protect the trust rather than punish the trustee. *Rodriguez-Tocker v. Estate of Tocker*, 35 Kan. App. 2d 15, 35, 129 P.3d 586 (2006).

The district court's removal of Brad as trustee was based on two considerations: (1) Brad's long pattern of violating his fiduciary duties by "treat[ing] the trust as his own property with no regard or consideration for the other beneficiaries" and (2) "the acrimony that exists between Mark and Brad." In his place, the district court ordered the appointment of a neutral, third-party trustee.

Brad and Amy argue that the district court abused its discretion in removing him as trustee because the trust gave him unfettered authority to do whatever he wanted with the trust assets. Their argument ignores this court's findings and rulings regarding Brad's breach of his fiduciary duties as a trustee. Despite Brad and Amy's insistence that Brad's actions as trustee fully complied with the trust, there is no question that Brad committed a breach of trust. As the *Roenne* court explained in its decision remanding the case, Brad's actions as trustee—acting as if there was no trust and all the trust's assets were a gift to him—constituted a breach of his fiduciary duties of loyalty, impartiality, and prudent administration. While the trust may have granted Brad control of its assets, he neglected

28

the fundamental fiduciary duties to act in good faith and in the interests of all the beneficiaries and engaged in a pattern of self-dealing. As a result, the district court had discretion to remove him as a trustee under K.S.A. 58a-706(b)(1).

The district court's findings of fact—specifically, that Brad treated the trust as his own property without regard for the other beneficiaries—were supported by substantial evidence in the record. And those findings support its decision to remove him as trustee. While "not every breach of trust justifies the removal of a trustee," Brad's actions as trustee and his blatant disregard of his siblings constituted a serious breach of trust. K.S.A. 58a-706, UTC Comments. See Restatement (Third) of Trusts § 37, comment e (2003) ("Not every breach of trust warrants removal of the trustee . . . , but serious or repeated misconduct . . . may justify removal.").

Here, Sonya directed that the trust was to be managed for the benefit of "'all of my children.'" *Roenne*, 58 Kan. App. 2d at 838. But over the course of his 25 years as trustee, Brad administered the trust solely to his own benefit, to the exclusion of his siblings, the other intended beneficiaries. Brad and Amy cannot meet their burden to show that no reasonable person would agree with the district court's decision that removing Brad as the trustee was necessary to protect the trust.

DID THE DISTRICT COURT ERR IN ORDERING POSTJUDGMENT INTEREST?

Brad and Amy argue that the district court erred in ordering postjudgment interest to begin to run 30 days after it entered its order on damages on June 22, 2022, because the judgment was not final until October 24, 2022, when the court entered its order on attorney fees and other remaining issues. They contend the postjudgment interest should not have begun to accrue until the judgment was final. Justin asserts that Brad is raising the issue for the first time on appeal, and that Brad's argument is meritless because the statute authorizing postjudgment interest requires only a judgment, not a final order.

29

Generally, issues not raised before the district court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Under Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36), when an issue was not raised before the district court, the party raising the issue must explain why the issue is properly before this court. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Brad and Amy concede that they did not raise this issue before the district court but assert that they could not have raised the issue previously because it "did not come up until the Judge made his ruling [on attorney fees on October 24, 2022]." It is unclear what prevented Brad and Amy from objecting to the court's ruling regarding postjudgment interest or filing a motion to alter or amend after the order on attorney fees was entered. Although we question whether this issue is properly preserved for appellate review, we will address the merits of Brad and Amy's claim.

K.S.A. 16-204(d) states: "Any judgment rendered by a court of this state on or after July 1, 1986, shall bear interest on and after the day on which the judgment is rendered." To the extent this court must construe and apply the statute, a question of law, it may exercise unlimited review. See *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 38 Kan. App. 2d 1092, 1095, 176 P.3d 231 (2008).

Brad and Amy argue that K.S.A. 16-204 requires a *final* judgment before interest begins to run. The district court entered its order on damages requiring Brad and Amy to pay back $1,714,300 to the trust on May 23, 2022—the order noted that postjudgment interest would begin to run 30 days later. But the district court noted that the judgment was not final at that time because the court still needed to determine the amount of the attorney fees award. The district court entered the order on attorney fees several months later on October 24, 2022, at which time its judgment became a final, appealable order.

The question is whether a judgment must be final before postjudgment interest begins to accrue. Generally, "[a] final decision is one that finally decides and disposes of

30

the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 1, 836 P.2d 1128 (1992). By statute, an appellate court may—with some exceptions—take an appeal only from a final decision. K.S.A. 2023 Supp. 60-2102(a)(4).

But just because a judgment generally must be final to be subject to appeal does not mean that a judgment must be final before postjudgment interest may accrue. It is not clear where Brad and Amy have derived the rule they assert, but even a cursory review of K.S.A. 16-204 suggests that they have simply read "final" into the applicable statutory language. As Justin points out, the statute never mentions that interest begins to run only after an order or judgment becomes final—it simply states that interest runs "on and after the day on which the judgment is rendered." K.S.A. 16-204(d). Moreover, Kansas caselaw dating back over 40 years supports this construction. See *Schaefer & Assocs., P. A. v. Schirmer*, 3 Kan. App. 2d 114, 119, 590 P.2d 1087 (1979).

A judgment is "the final determination of the parties' rights in an action." K.S.A. 2023 Supp. 60-254(a). The Kansas Supreme Court has held that under K.S.A. 16-204 a journal entry of judgment need not recite a specific amount of money to trigger postjudgment interest liability. *Greenhaw v. Board of Johnson County Comm'rs*, 245 Kan. 67, 70-71, 774 P.2d 956 (1989). Here, the district court's May 23, 2022, order is a judgment for a specific sum of money—$1,714,300—which fixed the rights and obligations of the parties. Although the district court's order reserved the issue of attorney fees and was not a final order from which an appeal could be taken, the May 23, 2022, order was still a judgment regarding the issue of damages. We conclude the district court did not err in ordering postjudgment interest to begin to run 30 days after it entered its order on damages.

31

## DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING ATTORNEY FEES OR IN CALCULATING THE AMOUNT?

Brad and Amy's final claim on appeal is that the district court abused its discretion in ordering them to pay attorney fees because their actions—although found to breach fiduciary duties—were permitted under the language of the trust. They also argue the amount of the award was excessive. In response, Justin asserts that the district court correctly awarded attorney fees, but that the amount was unreasonably low. He contends the district court should have awarded fees equal to 40% of the total damage award, per the contingency contract. That said, he also notes: "Though undersigned counsel may disagree with the decision to disregard the contingency fee agreement, the decision does not rise to the level of an abuse of discretion . . . ." Mark contends the district court did not abuse its discretion in crafting its attorney fees, except that it should not have allocated any portion of the award to Boone. Although Janette does not offer much substantive argument—beyond concurring with Mark that Boone should not have received any award of attorney fees—she appears to agree that, regarding the award as a whole, the district court "tried to find the best and equal and fair answer for everybody."

In Kansas, attorney fees cannot be awarded absent statutory authority or agreement. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 939, 135 P.3d 1127 (2006). Under K.S.A. 58a-1004, a district court is given the discretion to award attorney fees in cases involving the administration of a trust as justice and equity require—the court can order those fees be paid from any party or from the trust itself. And the district court has wide discretion to determine both the amount and the recipient of attorney fees. *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015); *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 203, 235 P.3d 515 (2010). On appeal, this court reviews a district court's decision on such an award for an abuse of discretion. *Wiles*, 302 Kan. at 81; *Culliss v. Culliss*, 62 Kan. App. 2d 293, 307, 514 P.3d 376 (2022).

32

In trust adjudication, an award of attorney fees and expenses is generally considered reasonable if the litigation benefited the trust estate. See *Moore v. Adkins*, 2 Kan. App. 2d 139, 151, 576 P.2d 245 (1978); *Culliss*, 62 Kan. App. 2d at 307. And legal proceedings are considered beneficial to a trust estate if questions are resolved so that the estate can be properly administered. *In re Trusteeship of the Will of Daniels*, 247 Kan. 349, 357, 799 P.2d 479 (1990).

Brad and Amy argue the district court's decision that they were personally liable for the plaintiffs' award of attorney fees was an abuse of discretion because the trust gave Brad, acting as trustee, broad discretion to administer the trust as he saw fit. As with the prior issues in which they have presented this argument, Brad cannot show that the district court abused its discretion. The district court's factual findings that Brad engaged in a pattern of conduct that put himself above the beneficiaries are supported by substantial competent evidence. The litigation also benefited the trust because ordering Brad to return the assets he took from the estate and removing him as trustee will ensure that the trust can be administered. It cannot be said that no reasonable person would agree with the district court's decision to order Brad and Amy to foot the bill for a portion of his siblings' legal fees and expenses in the interest of justice and equity.

Turning to the amount of the award, as the district court recognized, the amount of an attorney fee award—however calculated—had to be filtered through and satisfy the factors in Rule 1.5(a) of the Kansas Rules of Professional Conduct (2024 Kan. S. Ct. R. at 330) requiring that attorney fees be reasonable. Those factors include:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> "(3) the fee customarily charged in the locality for similar legal services;
> "(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." KRPC 1.5(a).

Brad and Amy argue that the award of attorney fees is excessive and constitutes an abuse of discretion. They first point out that the award of attorney fees to Boone was unreasonable because he was suspended from the practice of law during the pendency of the case and, at the time of his withdrawal, he had not produced any successful results for the plaintiffs. The district court determined not to enforce Boone's contingency agreement, finding that an hourly fee based on the time he had spent working on behalf of the plaintiffs was more reasonable. The district court awarded Boone $100,654 in fees and expenses for his 315 hours of work, at a rate of $300 per hour.

Brad and Amy do not challenge the number of hours the district court found Boone to have worked, or the hourly rate; they simply argue it was unreasonable to award him so much for his "partial participation in the case." They do not provide any authority to support their position that Boone's withdrawal or his failure to win at trial rendered him ineligible to receive an attorney fee. The district court also did not merely base its award to Boone on the outcome of the initial trial, the court found that Boone had worked on the plaintiffs' behalf for a number of years and represented them at trial, putting in 315 hours of time under a contingency contract, and that awarding him a reasonable hourly fee for that time was equitable. In short, the district court calculated Boone's attorney fees award based on the factors of KRPC 1.5(a). Brad and Amy have not established that the award was excessive and constituted an abuse of discretion.

Next Brad and Amy argue the award to Ulrich, who began representing the plaintiffs after Boone's withdrawal from the case, was also excessive. In its award to Ulrich, the district court applied a higher hourly rate, explaining that because he "stepped

34

into this case on short notice and under time constraints, as well as for the other reasons announced from the bench, Mr. Uhrich and his firm should receive 150% of the rate described above, or $450/hour." The district court approved Ulrich's submission of 465 hours of work on the plaintiffs' behalf, for a total award of $213,459.16 in fees and expenses. Brad and Amy's sole challenge to Ulrich's award is that the $450 hourly fee was not reasonable for the area—"A lawyer taking a case with time constraints on short notice does not justify a fee that is unreasonable in the community where the lawyer practices[.]" Ulrich stated that his standard hourly rate was between $505 and $545.

Although KRPC 1.5(a)(3) requires the district court to consider the fee customarily charged in the locality for similar legal services, that was not the court's only factor it considered in crafting the award to Ulrich. The district court appears to have struck a balance between the higher hourly fee allowed for Ulrich and the $300 rate applied to Boone's award. The district court also pointed out the time involved in Ulrich's representation, the novelty and difficulty of the issues, and time constraints involved in the case. The district court found that enforcing the contingency fee would have resulted in an unreasonably high award. For these reasons, the district court ordered Ulrich to be compensated at 150% of the reasonable hourly fee, which awarded the challenges of the work and provided a smaller, more reasonable award than a contingency fee would have provided. The district court's award was not based on an error of fact, and it cannot be said that no reasonable person would agree with the district court's fee award to Ulrich.

Finally, regarding the amount of attorney fees Brad and Amy are required to pay, Justin argues that the district court should have awarded his attorney an award based on the contingency contract for 40% of the total damages. But, as noted above, Justin concedes that the district court's decision to reject the contingency fee "does not rise to the level of an abuse of discretion." Here, both the plaintiffs' current attorney, Ulrich, and former attorney, Boone, requested an award based on their engagement contracts which were designed as contingency contracts, providing they should be paid 40% of any

amount recovered. The district court rejected this approach when it crafted the attorney fees award because (1) the 40% fee was unreasonably high, (2) trust litigation is rarely handled on a contingency basis, and (3) all of the other KRPC 1.5(a) factors supported an hourly award. We conclude the district court did not abuse its discretion by rejecting a contingency fee and awarding attorney fees at an hourly rate.

## Was the District Court Required to Award Statutory Double Damages and Did the Court Abuse Its Discretion by Denying Punitive Damages?

We now turn to several issues raised in the cross-appeals filed by Brad's siblings. To begin, Justin and Mark contend the district court erred in declining to award double damages under K.S.A. 58a-1002(a)(3), which they assert is *mandatory* whenever a trustee embezzles or knowingly converts trust property for their own use, as they contend Brad did in this case. Justin also argues that the district court abused its discretion in refusing to award punitive damages. Brad and Amy contend that the district court did not err in denying both statutory double damages and punitive damages.

When a party raises an issue on the application of double damages under K.S.A. 58a-1002(a)(3), we review the claim de novo. See *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 308 Kan. 1040, 1045, 427 P.3d 9 (2018); *In re Bradley Trust*, 60 Kan. App. 2d 66, 81, 490 P.3d 51 (2021). Moreover, "determining the nature, construction, and legal effect of a trust is a question of law over which [this court has] unlimited review." *Godley v. Valley View State Bank*, 277 Kan. 736, 741, 89 P.3d 595 (2004).

That said, there is no real debate among the parties about the statutory language of the double damage provision. Rather, Mark and Justin seem to argue that the district court's determination that Brad did not *embezzle* or *knowingly convert* the property of the trust to his own use is unsupported by the evidence. Accordingly, the issue presents this court with a mixed question of law and fact. In such a situation, this court reviews the

36

district court's factual findings under the substantial competent evidence standard and its conclusions of law based on those facts under unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.' In determining whether substantial competent evidence supports the district court findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence. [Citations omitted.]" 298 Kan. at 1175-76.

K.S.A. 58a-1002(a) provides:

"A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of:

"(1) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred;

"(2) the profit the trustee made by reason of the breach; or

"(3) if the trustee embezzles or knowingly converts to the trustee's own use any of the personal property of the trust, the trustee shall be liable for double the value of the property so embezzled or converted."

Kansas courts have noted that the double damages provision under K.S.A. 58a-1002(a)(3) is similar in nature and purpose to punitive damages. See *Alain Ellis Living Trust*, 308 Kan. at 1062. Punitive damages are not based on a theory that the plaintiff has a right to recover them but on the premise that the defendant deserves punishment for malicious, vindictive, or willfully and wantonly invasive conduct. Punitive damages are intended to restrain and deter others from committing similar conduct. *Adamson v. Bicknell*, 295 Kan. 879, 888, 287 P.3d 274 (2012).

The district court decided not to award double damages under K.S.A. 58a-1002(a)(3) because it found that Brad—acting as trustee/beneficiary under what he believed to be the authority given to him by the trust—did not embezzle or willfully

37

convert trust assets. Its decision not to order punitive damages followed similar logic. The district court explained:

> "The evidence before the Court and the facts contained in the Court of Appeals decision make it clear that Sonya Miller in her trust did a poor job of defining the trustee's obligations. Specifically, by making Brad Miller both the trustee and a beneficiary, and by giving him total discretion on the awarding of distributions, and by attempting to remove all accountability requirements, she helped create this unfortunate situation that has occurred these past twenty-six (26) years.
>
> . . . .
>
> "In this particular case, the language of the trust purported to give Brad Miller the authority to do what he did, to award himself all of the assets of the trust and all earnings of the trust to the exclusion of his siblings. The District Court and the Appellate Court accepted the testimony that Brad Miller did so with the advice of legal counsel and the bank trust department. Trust law is equity in nature. In this particular case, because of the language in the trust, this Court finds it would be inequitable to impose the double damage punitive provision of K.S.A. 58a-1002(a)(3) because the trust purported to give Brad Miller the authority he used. Second, this Court finds under the equity principle, that Brad was a beneficiary along with his siblings, and the statute talks of embezzling and converting trust assets to trustee's personal use, which this Court finds would not apply to a beneficiary acting in accordance with the language of the trust. Therefore, in equity, this Court does not award the penal or punitive damages under K.S.A. 58a-1002(a)(3) or (c).
>
> ". . . Taken at face value, the trust granted Brad Miller the express authority to act as he did. However, all trusts in Kansas, by the nature of their being a trust, requires the trustee to act with loyalty, impartiality, and prudence."

In short, while the district court clearly found that Brad had violated his fiduciary duties by acting as he did, those actions did not amount to embezzlement or a knowing conversion and did not rise to the willful or fraudulent level of conduct required for the application of double damages or punitive damages. While the district court stated that Brad had breached his fiduciary duties to the other beneficiaries in acting on his

purported authority, it credited his apparent belief that he was empowered by the trust to act as he did. Similarly, because of the "poor guidance in the trust document itself," the district court found that punitive damages were also unwarranted. It appears the district court's decision not to order double or punitive damages was based on the distinction that although Brad acted out of self-interest, in violation of his fiduciary duties, he was acting as if he were empowered to do so. In short, the district court found that Brad had not embezzled or knowingly converted trust assets and that his conduct was not wanton or willful conduct and did not amount to fraud or malice.

Justin argues that the district court needed to order double damages because, "[i]t is indisputable that [Brad and Amy] both embezzled and converted the Trust's assets to their own personal use." Brad and Amy defend the district court's decision, asserting Brad did not intentionally or fraudulently appropriate any trust funds or assets because he was acting in reliance on the authority he believed to be authorized by the trust—regardless of whether his actions separately constituted a breach of his fiduciary duties.

K.S.A. 58a-1002(a)(3) authorizes double damages for a breach of trust *if* a trustee "embezzles or knowingly converts to the trustee's own use any of the personal property of the trust." Here, the district court found that Brad did not embezzle or knowingly convert personal trust property to his own use because he was a beneficiary and believed he could use trust income and assets as he saw fit. These findings are supported by substantial competent evidence. Although Brad's belief was legally erroneous, it cannot be said that he acted knowingly or fraudulently because he was operating as if he had a right to do what he did. It is perhaps worth noting that even the district court that conducted the initial trial agreed with Brad's understanding that he was entitled to act as he did. *Roenne*, 58 Kan. App. 2d at 841-42.

"Embezzlement" is defined as "[t]he fraudulent taking of personal property with which one has been entrusted, [especially] as a fiduciary." Black's Law Dictionary 659

39

(11th ed. 2019). "The gist of the offense of embezzlement is the withholding of money or property with intent to defraud the owner, or to deprive him of the use and benefit of his money or property, and convert or apply the same to the defendant's own use or benefit." *State v. Atwood*, 187 Kan. 548, 555, 358 P.2d 726 (1961). "Conversion" is "[t]he wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property." Black's Law Dictionary 420 (11th ed. 2019).

As explained above, because Brad believed the distributions of income and the transfer of trust assets were authorized by the trust's grant of unlimited control to him as trustee, his conduct did not rise to the level of embezzlement or conversion. While ultimately mistaken, Brad was acting as trustee/beneficiary and was entitled to distributions under the trust, he had a rightful claim to the distributions, which were not another's money or property. Contrary to Mark and Justin's argument, Brad did not convert trust property or embezzle it as a matter of law. The district court specifically acknowledged Brad's status as a beneficiary, which entitled him to distributions. The fact that Brad disregarded his fiduciary duties to the other beneficiaries in making those distributions and transfers to himself is a separate issue that does not affect the application of the double damages provision. Because the district court's factual findings are supported by substantial competent evidence and those findings support its legal conclusion that K.S.A. 58a-1002(a)(3) was inapplicable, we conclude the district court did not err in denying an award of double damages.

Turning to Justin's argument that the district court should have awarded punitive damages, this court reviews a district court's decision on the award of punitive damages for an abuse of discretion. *McElhaney v. Thomas*, 307 Kan. 45, 57, 405 P.3d 1214 (2017). Justin does not argue that the district court based its decision on any error of fact or law; he argues only that its decision was unreasonable.

Punitive damages are intended to punish a defendant for "malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Cerretti v. Flint Hills Rural Elec. Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992). In breach of trust cases, courts are explicitly permitted to award punitive damages on top of the award of other statutory remedies. K.S.A. 58a-1002(c); see *Newton v. Hornblower, Inc.*, 224 Kan. 506, Syl. ¶ 13, 582 P.2d 1136 (1978) ("Punitive damages, as well as actual damages, are proper where a breach of a fiduciary duty is involved.").

Dovetailing with its decision denying double damages, the district court found that Brad's actions—while self-interested, greedy, and in violation of his fiduciary duties—were not malicious, vindictive, or willful and wanton. The district court noted that while justice and equity demanded that Brad and Amy be ordered to pay the plaintiffs' attorney fees, it did "not believe punitive damages beyond attorneys' fees are appropriate here."

Justin's argument on punitive damages is much like his argument for double damages, he contends the district court should have awarded them because Brad's actions were willful and wanton. He also argues that the balance of factors set forth in K.S.A. 60-3702 supported a punitive damage award. He alleges: "Brad concealed what he was doing from his siblings" and failed to keep any account of his actions as trustee; he was aware of the harm he was causing the other beneficiaries; he profited substantially from his misconduct; and, his pattern of conduct lasted over 20 years. But the district court weighed these factors in considering whether to award punitive damages. The district court acknowledged Brad's objectionable conduct toward the trust and its other beneficiaries, yet it found that Brad's apparent reliance on the language of the trust weighed against a finding of wanton conduct. While the district court found that Brad's actions required an attorney fees award in the interest of justice and equity, the court found that a punitive damage award was unnecessary under the circumstances. Justin has failed to show that the district court abused its discretion in denying punitive damages.

41

## DID THE DISTRICT COURT ERR IN AWARDING ATTORNEY FEES TO BOONE?

Mark argues that the district court abused its discretion in awarding attorney fees to Boone because his indefinite suspension caused him not to fulfill the contingency fee contract for legal services. Mark consistently refers to Boone as being "disbarred," but the record shows that his law license is indefinitely suspended. See *In re Boone*, 309 Kan. 1110, 1126, 442 P.3d 477 (2019). Mark's argument under this issue appears to a response to Boone's argument that he should have received an attorney fee award based on the 40% contingency fee envisioned in the engagement contract, rather than an hourly award as crafted by the district court. The majority of Mark's argument focuses on the nature of the engagement contract, whether Boone breached that contract by being suspended, and whether that alleged breach precludes him from enforcing the contingency fee provision or receiving any attorney fees award at all. Justin does not join Mark's argument that Boone should not have received any attorney fee award; he notes that the district court's grant of attorney fees to Boone "was an attempt to craft an equitable solution" to find a "timely final resolution" to the issue of Boone's attorney fee lien. Janette similarly asserts, "The Court did not err on Attorney Fees."

Boone argues that his indefinite suspension does not prevent his entitlement to an award of attorney fees for the services rendered to the plaintiffs. He points to other states that have addressed the issue, asserting that a majority have found that an attorney suspended or disbarred—for matters unrelated to their representation—and who voluntarily withdrew from the representation while the case was still pending, is permitted to receive an award of attorney fees. Mark cites no contrary legal authority. Failing to support a point with pertinent authority or failing to show why a point is sound despite a lack of supporting authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Thus, we need not address whether Boone's suspension, standing alone, precluded him from receiving an award of attorney fees.

Mark's primary argument appears to be that Boone breached the engagement contract and thus was not entitled to receive the contingency fee that the contract stipulated. As previously noted, a district court has wide discretion to determine both the amount and the recipient of attorney fees, and this court will only reverse such an award for an abuse of discretion. *Cullis*, 62 Kan. App. 2d at 307.

The problem with this argument is that the district court did not base its award of attorney fees to Boone on the engagement contract he executed with the plaintiffs. The district court rejected the contingency fee detailed in the contract when deciding what a reasonable award of attorney fees would be; in doing so, the court considered all of the factors under KRPC 1.5(a). The district court determined that Boone should simply be granted payment for the time he worked on the case at a reasonable hourly rate. Regardless of what the engagement contract specified, the district court used its discretion to determine that it was just and equitable for Boone to receive payment for 315 hours spent working on the case at $300 per hour. Thus, Mark's argument on Boone's entitlement to attorney fees based on his alleged breach of the engagement contract is unavailing. Mark cannot show that the district court abused its discretion in granting Boone an hourly award of attorney fees.

### DID THE DISTRICT COURT ERR IN FAILING TO REQUIRE A SUPERSEDEAS BOND?

Justin argues the district court erred waiving the requirement that Brad and Amy post a supersedeas bond for the full amount of the judgment. In its order on attorney fees, the district court crafted a modified appeal bond for Brad and Amy: "If [Brad and Amy] return the mineral rights to the Trust and all suspended royalties to the Trust without waiting for any appeal of this Order, then such will serve as the supersedeas bond with no further appeal bond being required if this Order is appealed." Brad and Amy assert that the district court did not abuse its discretion in entering this order.

Supersedeas bonds, and their waiver, are governed by K.S.A. 2023 Supp. 60-2103(d). The purpose of a supersedeas bond under K.S.A. 60-2103(d) is "to assure satisfaction of the judgment together with costs, interest, and damages for delay." *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 89, 626 P.2d 1211 (1981). See 20 Moore's Federal Practice § 308.31 (Matthew Bender 3d ed.) ("The purpose of a bond is to preserve the status quo while protecting the prevailing party against any loss he may sustain.").

Justin contends that the district court failed to follow the applicable statutory procedures when it modified Brad and Amy's appeal bond. He notes that a bond amount may be reduced either upon the appellant proving by a preponderance of the evidence that the full amount would result in appellant suffering undue hardship or upon good cause shown. See K.S.A. 2023 Supp. 60-2103(d)(2)(A), (E). But he argues the district court did not require Brad and Amy to make either showing.

The record contains no findings on whether Brad and Amy would suffer prejudice or had shown good cause, but it does not appear that Justin objected to the district court's lack of findings on this matter, or that he objected to the court's ruling on the matter. An objection to alleged inadequacies in a district court's findings is generally required for preservation of issues sought to be appealed. See, e.g., *Hooks v. State*, 51 Kan. App. 2d 527, 529, 349 P.3d 476 (2015) ("The district court has the primary duty to provide adequate findings of fact and conclusions of law on the record of its decision on contested matters" but parties "must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal."). Justin asserts that this issue "was preserved at least by various motions filed by Caleb Boone and by argument in at least one hearing," but the record does not show where Justin joined such an argument before the district court. Because it does not appear that Justin objected to the district court's decision to modify Brad and Amy's appeal bond, we decline to review the district court's decision.

Beyond the fact that Justin has not preserved this issue, it also appears that the matter is moot. A case is moot when a court determines that """it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.""" *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020). A supersedeas bond is intended to protect the prevailing parties' interests *during* the appeal; any ruling on this issue at this stage would be ineffectual. Because any ruling on this issue in Justin's favor would be unavailing, we find the issue is moot.

## DID THE DISTRICT COURT ERR IN FINDING THE ATTORNEY FEES AWARD WAS IN LIEU OF ANY AMOUNTS THE ATTORNEYS COULD SEEK UNDER THEIR ENGAGEMENT CONTRACTS?

Justin contends the district court's award of attorney fees improperly included a provision that provided that his attorney would not be permitted to seek any additional payment beyond the attorney fees award. While this issue is raised in Justin's brief, it is effectively advocating on behalf of his attorney, who would stand to be allowed to recover additional attorney fees from Justin if the argument were successful. In its order on attorney fees, the district court ruled that the

> "award is in lieu of any amount that Plaintiffs' attorneys may have sought to receive under their engagement contracts. None of the attorneys in this matter shall seek to recover from their clients any fees beyond the amounts described herein, and this amount represents the total amount of fees to be paid by Defendants to Plaintiffs or any attorneys claiming fees in this matter, except for fees that may have been incurred after June 24, 2022 by Mark Miller."

As we said before, subject to limited exceptions, issues not raised before the district court cannot be raised on appeal. *Duckworth*, 293 Kan. at 403. To satisfy the preservation rule, a party must either provide a "pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court, or "[i]f the

issue was not raised below, there must be an explanation why the issue is properly before the court." See Kansas Supreme Court Rule 6.02(a)(5). A party who ignores this requirement is considered to have waived and abandoned any exception to the preservation rule. See *Godfrey*, 301 Kan. at 1043 ("[A]n exception must be invoked by the party asserting the claim for the first time on appeal.").

Although Justin alleges that he raised the issue before the district court, the record citation he provides does not reveal any such argument or objection to the court's ruling; the citation he does provide is a page of Brad and Amy's brief to the district court on the issues of attorney fees. Moreover, a review of Justin's brief to the district court on attorney fees and his various other pleadings does not reveal that he has ever raised this issue. Justin has not provided an accurate pinpoint citation to the location in the record where he raised this issue, a review of the record has not revealed the needle in the haystack showing that he ever made such an argument, and he has provided no argument on any exception to the preservation rule. Thus, Justin has failed to comply with Supreme Court Rule 6.02(a)(5), and we find this issue is not preserved for appeal.

## DID THE DISTRICT COURT LACK JURISDICTION BECAUSE SONYA'S 19 GRANDCHILDREN WERE NOT JOINED IN THE CASE?

We now turn to several issues raised in the cross-appeal filed by Boone, who was permitted to intervene in the case solely to advocate for his attorney fees. Boone first argues that the district court lacked jurisdiction because Sonya's 19 grandchildren—contingent beneficiaries of the trust who, upon the death of all the present beneficiaries, will receive a per capita distribution of the remaining amount held in the trust—"were not represented in this case either through Guardians ad Litem or other Counsel." He contends the district court's failure to join these 19 grandchildren deprived the district court of jurisdiction. None of the other parties have addressed this issue.

46

It appears that Boone tried to raise a similar argument before the district court. But a review of the hearing where Boone raised the issue has not revealed that the district court ever ruled on the matter; instead, the court responded to Boone's argument by stating that it was "way beyond the issue we're talking about right now." Although the issue may not be preserved, if the district court lacked jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *In re Care & Treatment of Emerson*, 306 Kan. 30, 39, 392 P.3d 82 (2017). Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

Throughout his 10-page argument, Boone does not provide any caselaw to support his position, the only authority he cites is K.S.A. 2023 Supp. 60-219, which provides the statutory authority for the required joinder of necessary parties. The statute provides that a party must be joined to an action if, in that party's absence, the court "cannot accord complete relief among existing parties." K.S.A. 2023 Supp. 60-219(a).

Boone contends that the district court could not afford complete relief to the parties in the absence of the 19 grandchildren and that the case "could not possibly be adjudicated without their presence." Beyond the grandchildren's contingent interest in the trust, an interest that will not be triggered until the death of all the current beneficiaries, it is unclear why the grandchildren's absence would have prevented the district court from granting complete relief among the parties. While the grandchildren, as remainder beneficiaries, hold a future interest in the trust, they were not indispensable parties in the present litigation. The district court was able to fully settle the issues of an appropriate remedy, rule on Brad and Amy's defenses, and award attorney fees, without the participation of the 19 grandchildren. Thus, the district court did not lack jurisdiction.

## DID THE DISTRICT COURT ERR IN DENYING BOONE'S MOTION FOR SUMMARY JUDGMENT ON HIS CONTRACT CLAIM FOR 40% OF THE PLAINTIFFS' RECOVERY?

Boone argues that the district court erred in denying his motion for summary judgment seeking 40% of the plaintiffs' recovery under their engagement contract. Mark contends that Boone was not entitled to the contingency fee because he materially breached the terms of the contract. Mark also asserts that "a contract that purports to grant a forty percent contingency for after being disbarred and unable to fulfill its terms would be unconscionable and void for public policy reasons."

Three months after the *Roenne* court's remand, on May 25, 2021, Boone filed attorney's liens against all parties and their counsel. He later moved to "Intervene as a Private Citizen" regarding his various attorney liens for legal work he performed for the plaintiffs between June 18, 2015, through June 6, 2019. The district court permitted Boone to intervene solely to recover his attorney fees. Boone later moved for summary judgment, in which he alleged he was "entitled to Summary Judgment against all of the Plaintiffs, his former clients, for the full contingency fee set forth in his written contract, in the full amount of 40% in value of all money and things of value recovered for the Plaintiffs." In that motion he contended that he had "fully performed and fully discharged his duty as counsel" for the plaintiffs under their contract. The district court ultimately denied Boone's summary judgment motion.

To be granted summary judgment, a party must prove—based on admissible evidence—that there are no material issues of disputed fact. See *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In their responses to Boone's motion for summary judgment, the plaintiffs vigorously disputed many of Boone's factual assertions. The district court's decision to deny Boone's motion was proper because many genuine issues of material fact remained in Boone's contract-based claims, particularly regarding whether Boone fully performed under the contract, whether

he was responsible for their ultimate recovery, and whether the contract was breached when Boone withdrew due to his indefinite suspension. These fact issues were vigorously contested in the summary judgment pleadings and remain contested on appeal. Thus, we conclude the district court did not err in denying Boone's motion for summary judgment.

## DID THE DISTRICT COURT ERR IN FAILING TO AWARD PREJUDGMENT INTEREST?

Boone argues the district court should have awarded prejudgment interest on the income that Brad and Amy removed from the trust. It appears that Boone raised the issue of prejudgment interest in his "Amended Petition of Plaintiff Intervenor," in which he argued that imposition of prejudgment interest was necessary to protect his right to a contingency fee based on the plaintiffs' recovery.

Here, based on the record citations that Boone has provided and a review of the entire record, it does not appear that the district court ever considered his request for prejudgment interest. To be preserved for this court's consideration, an issue must be raised *and ruled on* in the district court; to satisfy the prudential preservation rule, a party must either provide a "pinpoint reference to the location in the record on appeal" where the issue was raised and ruled on or "[i]f the issue was not raised below, there must be an explanation why the issue is properly before the court." See Kansas Supreme Court Rule 6.02(a)(5). Boone has provided no citation to where the district court ruled on his request for the application of prejudgment interest, and a review of the record has not revealed such a ruling. Nor has Boone provided any explanation why the issue is properly before the court. A party who ignores Rule 6.02(a)(5) risks a ruling that the issue is improperly briefed, and the issue will be considered waived or abandoned on appeal. *Godfrey*, 301 Kan. at 1044. Finally, Boone was only permitted to intervene in this case to advocate for his attorney fees, and we find this issue is beyond that scope. For these reasons we decline to address this issue on appeal.

## SHOULD THE DISTRICT COURT'S PROTECTIVE ORDER SEALING CERTAIN INFORMATION PROVIDED BY BRAD AND AMY BE DISSOLVED?

Finally, Boone argues this court should order the district court's protective order sealing certain documents relating to Brad and Amy's financial information, which were used to calculate the damage award, be dissolved. Boone argues that he should have complete access to these documents "before he files his Appellate Brief." On top of including the issue in his brief, Boone filed motions with this court seeking the same relief; this court denied the motion to unseal.

Considering that Boone has already filed his brief, it appears that this issue is moot. Boone filed a 61-page initial brief as a cross-appellant and a 9-page reply brief even after his motion to unseal the documents was denied. His briefs do not reflect that he was hampered in any way in addressing his issues by not having access to the sealed documents. An issue is moot when a court finds that "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'" *Roat*, 311 Kan. at 584. Any action taken by this court on the district court's protective order would be ineffectual as Boone has already submitted his brief.

Finally, we find that this issue is beyond the limited scope for which Boone had a right to intervene. The documents under seal detailed Brad and Amy's assets, debts, and the oil revenue they received during the life of the trust. The district court used the information to decide damages and the amount Brad and Amy needed to repay the trust. Boone has no need to inspect the documents to advocate for his attorney fees, whether the attorney fee award is based on an hourly rate or a contingency fee under contract.

Affirmed.